Whetakek, Judge,
delivered the opinion of the court:
Plaintiff sues for the salary of his office during the period between his suspension from his position of purchasing agent for the Atomic Energy Commission and his restoration to duty. Plaintiff says that he was restored to duty because his suspension was found to have been “unjustified or unwarranted” and, hence, since he was in the “classified civil service”, he is entitled to recover under the Lloyd LaFollette Act, 37 Stat. 555, as amended, 5 U.S.C. § 652 (a) and (b) (1958 ed.).
*636 Defendant says be was not in the “classified civil service” at the time of his suspension and, hence, has no rights under this Act.
Plaintiff received a probational appointment with the United States Engineers’ Office on February 23, 1942, and, after serving his period of probation, he acquired permanent competitive status in the classified civil service. Shortly after World War II he was transferred to the Atomic Energy Commission, where he was employed as a “purchasing assistant”, a position in the classified civil service. He held this “competitive status” from June 15,1947, to January 9,1949.
On about January 9,1949, plaintiff received a “Notification of Personnel Action”, dated January 9, 1949, notifying him of a conversion of his position in the classified civil service to “AEC Regular Appointment”, without any change in salary. This notification stated:
This is action taken in accordance with GM Bulletin No. 117 dated 11-29-48. This is an excepted appointment to an excepted position without regard to Civil Service Laws.
Converted from Competitive Status.
This is a transfer from an AEC Classified position effective the above date without a break in service.
We are not given the terms of “Bulletin No. 117”, referred to in the notification, but we can safely assume it was in accord with the terms of the letter to the Civil Service Commission of November 80, 1948, signed by Carleton Shugg, Deputy General Manager, Atomic Energy Commission (filed as Exhibit No. 1, defendant’s brief), notifying the Civil Service Commission that the Atomic Energy Commission had “exempted all of its positions from the competitive civil service.”
Since plaintiff’s right of recovery depends upon his having-had civil service status at the time of his suspension, the issue presented is the validity of this action of the Atomic Energy Commission.
This action was taken under the purported authority of Section 12(a) (4) of the Atomic Energy Act of 1946, 60 Stat. 755, as amended, 42 U.S.C. § 2201(d) (1958 ed.). This section reads in pertinent part:
*637 In the performance of its functions the Commission is authorized to * * * appoint and fix the compensation of such officers and employees as may be necessary to carry out the functions of the Commission. Such officers and employees shall be appointed in accordance with the civil-service laws and their compensation fixed in accordance with the Classification Act of 1949, as amended, except that, to the extent the Commission deems such action necessary to the discharge of its responsibilities, personnel may be employed and their compensation fixed without regard to such laws: * * *
"We limit our discussion to the narrow question presented to us, to wit: Did this Act give the Commission the power to convert plaintiff’s status from a classified position to an excepted one and thus deprive him of the rights he had under the Lloyd LaFollette Act, supra?
That Act is prospective in its terms. It permits future employment of persons without regard to the civil service laws, when the Commission decides such action is necessary; but it does not give the Commission authority to take away rights of personnel employed before the Atomic Energy Commission decided to place its employees in the “excepted” category.
The Act specifically requires the appointment of the employees of the Commission “in accordance with the civil service laws”, as a general rule; but in cases where the Commission thought this impractical or undesirable, it was given power to depart from the general rule and to permit employment of personnel “without regard to such laws.” Relative to this power of exemption the report of the Senate Committee on the Bill said in part:
* * * Reluctant as the committee is to depart from the established framework of the civil service laws, it considers the grant of this exempting authority to the Commission essential to assure the Commission sufficient flexibility in the conduct of its large-scale and varied operations, and to insure availability to the Commission of personnel of the highest caliber.
Since this was the expressed desire of Congress — appoint under the civil service laws where you can, and depart from *638 tbem only where necessary — it would seem that the Commission would have stretched to the limit the leeway given it, if it had adopted a regulation saying no more than that all future employments would be made “without regard to such laws.” It undoubtedly exceeded its authority when it took out of the classified civil service employees already in it, and thus deprived them of their rights under the civil service laws.
Ever since about 1886, Congress has been more and more zealous in protecting the rights of the classified employees of the Government. Had it intended to give the Atomic Energy Commission authority to take away from them any of their zealously guarded rights, it would have said so in no uncertain terms. There is not a word in the Act from which such authority could possibly be implied. The Lloyd LaFollette Act says, “No person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service.” The Atomic Energy Act not only does not repeal this, but it requires the Commission to make its appointments in accordance with it, in so far as it can. Authority cannot possibly be implied to take away from an employee civil service rights already acquired under it.
This was the view of the Court of Appeals for the District of Columbia in Roth v. Brownell, 215 F. 2d 500, cert. denied, Brownell v. Roth, 348 U.S. 863, with which we agree.
We have in this case, however, an element not presented in the Both case. According to the stipulation of the parties, when plaintiff received notice of the conversion of his status from the classified civil service to an excepted position, he raised no objection, but remained silent. Three years later he accepted a promotion. This might be construed to amount to a consent to the action taken, but, even so, it is well settled that it is against public policy to hold an employee bound by a waiver of a right attached to his office by an Act of Congress.
In Glavey v. United States, 182 U.S. 595, 610, the Supreme Court said that the mere failure of one to demand the salary *639 fixed by Congress is not the waiver of his right to it. In United States v. Andrews, 240 U.S. 90, an officer was granted leave by the President of the United States, on the condition that he forego his salary while on leave. The Supreme Court said this was against public policy. In MacMath v. United States, 248 U.S. 151, this was reaffirmed. This Court has uniformly so held. See Bancroft v. United States, 56 Ct. Cl. 218, aff'd per curiam, 260 U.S. 706, and William W. Ford v. United States, 108 Ct. Cl. 174, 69 F. Supp. 332.
; Plaintiff never lost the rights he acquired under the Lloyd LaFollette Act when he acquired permanent competitive status in the classified civil service. He is, therefore, entitled to recover the salaiy he would have received between the time of his suspension on September 9,1954, and the date of his reinstatement on July 27,1955, because there is no contention that the requirements of the Lloyd LaFollette Act were met, and Section 652(b)(1) gives him the right to recover where his suspension was unjustified or unwarranted. That it was unjustified or unwarranted follows from his suspension without compliance with the requirements of the Act.
Plaintiff’s motion for summary judgment is granted,- and defendant’s like motion is denied. Judgment is entered for plaintiff, with the amount of recovery to be determined pursuant to Eule 38(c).
In accordance with the opinion of the court and a memorandum report of the Commissioner as to the amount due thereunder, it was ordered on January 10, 1964, that judgment for plaintiff be entered for $3,956.60, without interest, and that, in accordance with the stipulation of the parties, the defendant, in paying the aforesaid judgment, may credit $297.22 of said sum to plaintiff’s retirement fund, and $33 to premiums on plaintiff’s insurance, and may apply $891.74 to payment of Federal withholding tax, and $247.71 to payment of New York State .tax, the balance of $2,486.93 to be paid to the plaintiff.