Jack I. JOHNSON, Petitioner,

v.

BOARD OF APPEALS AND REVIEW, Government of the District of Columbia, Respondent.

Herbert W. PAXTON, Jr., Petitioner,

v.

BOARD OF APPEALS AND REVIEW, Government of the District of Columbia, Respondent.

Nos. 5634, 5635.

District of Columbia Court of Appeals.

Argued May 25, 1971.

Decided Oct. 6, 1971.

Carleton U. Edwards, II, Washington, D. C., with whom Benjamin Greenspoon, Washington, D. C., was on the briefs, for petitioners.

Leo N. Gorman, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the briefs, for respondent.

Before HOOD, Chief Judge, and KELLY and REILLY, Associate Judges.

REILLY, Associate Judge:

Petitioners are former members of the United States Park Service, retired after hearings before the Police and Firemen's Retirement Board (referred to herein as the "Retirement Board") for disabilities not incurred in, nor aggravated by, the performance of duty. In the hearings before the Retirement Board, the officers did not deny that they were "disabled" (*i. e.*, no longer fit to perform duty), but contended that the disability had been caused or aggravated by service in the force.

Deeming themselves aggrieved by contrary findings,[1] petitioners thereafter appealed to the Board of Appeals and Review for the District of Columbia which, in separate orders, sustained the Retirement Board.

Petitioners have brought these orders to this court for review. Though argued separately, the cases are consolidated for the purpose of disposition because common questions of law are involved.

Before proceeding to the substantive issues raised by petitioners, we first consider the question of our jurisdiction to review the matter—an issue raised by the Board of Appeals and Review. That section of the Code which provides for judicial review of decisions of agencies of the District of Columbia reads in pertinent part:

> Any person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Commissioner or Council or an agency in a contested case, is entitled to a judicial review thereof in accordance with this chapter upon filing in the District of Columbia Court of Appeals a written petition for review. * * *[2]

1. D.C.Code 1967, § 4–526, the section under which petitioners were retired, provides for an annuity computed at the rate of 2% of retiree's basic salary at the time of retirement for each year of service, the annuity to be no less than 40% nor greater than 70% of such salary. Petitioners contend that they should have been retired under § 4–527, which provides for an annuity computed at the rate of 2½% of basic salary at the time of retirement, the annuity to be no less than 66⅔% nor greater than 70% thereof.

2. D.C.Code 1967, § 1–1510 (Supp. IV, 1971).

The Board of Appeals and Review contends that neither petition involves a "contested case" subject to our review, pointing out that such term is defined in the Code to exclude "the selection or tenure of an officer or employee of the District."[3] The Board argues that the term "tenure" should be interpreted to include "tenure of retirement", that is, the "manner or means of holding" retirement rights.

Respondent cites no authority, and we have been unable to find any, which extends the concept of tenure so drastically. The legislative history of the Act is certainly not helpful to respondent. The committee which reported this legislation to the House stated:

> The definition of "contested case" has been drafted so as to exclude administrative functions traditionally nonsusceptible to application of the process of adjudication, such as inspections, tests, elections, etc., and where generally no hearing is expressly or implicitly required by any other law.[4]

A contested retirement case scarcely fits into this category. D.C.Code 1967, § 4–533 (Supp. IV, 1971), specifically requires that any officer under consideration for retirement under the chapter be afforded an opportunity to appear and give evidence.

This court's decision in Matala v. Washington, D.C.App., 276 A.2d 126 (1971), does not sustain respondent's position. There, a police officer was fined $700 by the Metropolitan Police Special Trial Board for official misconduct. When the case came before us on petition for review we dismissed for lack of jurisdiction. We attributed significance there to the fact that the same section of the Code authorizes fines, suspensions, and removals of police officers, and that all such measures serve the same purpose, viz., maintenance of discipline in the police force. We also emphasized that imposition of a fine was a less severe penalty than removal from the

force—an action concededly not subject to judicial review.

The same considerations do not apply here, for neither petitioner assets a right to remain on active duty, thereby limiting the issue to the type of disability allowance which the Retirement Board granted. To be sure, as the government points out, one of the stated purposes of the Administrative Procedure Act is to provide a uniform method for review of final determinations of any District agency but, in our opinion, such general language does not suggest that the issue of what kind of pension, if any, to which a public employee is entitled, is merely a facet of the right to obtain or retain public office.

Having decided that the decisions of the Retirement Board are not exempted from judicial review, we turn now to the objections raised by each petitioner in his particular case.

In No. 5634, petitioner Johnson contended at the hearing before the Retirement Board that his disease was caused or aggravated to the point of complete disability by his service with the Park Police, and in particular by certain experiences: to wit, (1) his duty during the 1968 riots and demonstrations, (2) having to drop an assault charge against a diplomat at the insistence of his commanding officer, and (3) being told in a "gruff" manner by his superior officer to go out and correct some 40 parking citations he had misdated earlier that day.

The Retirement Board found that Johnson suffered from "a personality trait disturbance in a passive aggressive personality, with paranoid overtones." The views of the Retirement Board were amplified by a member of that agency who defended the decision before the Board of Appeals and Review. He summarized the evidence in the record as pointing to a disturbance in early childhood with lifetime consequences, aggravating personal problems which ulti-

---

3. D.C.Code 1967, § 1–1502(8) (B) (Supp. IV, 1971).

4. H.Rpt. 202, 90th Cong., 1st Sess. 1967.

mately became the cause of petitioner's breakdown. The Retirement Board concluded that it could find no incidents or duty-related circumstances which would cause or aggravate his disabling condition. The Board of Appeals sustained.

Evidence in the record supports the Retirement Board's finding as to the nature of Johnson's condition, including oral testimony by a psychiatrist and written testimony by three other members of the medical profession. There seemed to be agreement also that Johnson's ultimately disabling condition was due to factors which existed prior to his service with the Park Police.

Paxton, petitioner in No. 5635, contended before the Retirement Board that his disability was caused by on-the-job pressures commencing in 1968. Paxton testified that he felt he was being persecuted by one of his superior officers, who, in order to establish grounds for dismissing him from the force, watched him constantly, refused to give him credit for work done, and quibbled over minor discrepancies in his reports. The fact of Paxton's long and arduous hours of duty during the demonstrations and riots in 1968 were adduced as factors in his disability. His counsel also submitted that the detective work Paxton performed would tend naturally to aggravate his suspicious nature.

The Retirement Board found that Paxton was suffering from an "inferiority complex", otherwise described in the record as a "severe neurosis with features of tensions, anxiety and depression". There was some evidence indicating that this condition had its origin in childhood incidents and had been exacerbated in later life by traumatic off duty experiences, including quarrels with his former wife, culminating in a fatal affray.[5] The Retirement Board concluded that there was no evidence connecting Paxton's disability with his official service with the Park Police. The Board of Appeals upheld that conclusion.

■■■ Petitioners' principal argument before this court is that the government failed to carry its burden, assertedly imposed by statute,[6] of establishing that petitioners' disabilities did not result from the performance of duty. We note that in neither hearing did petitioner contend before the Board that his basic disease—in No. 5634 "a passive aggressive personality with paranoid overtones"; in No. 5635 "severe neurosis with features of tensions, anxiety and depression"—was contracted in the

---

5. Paxton was tried and acquitted on a charge of involuntary manslaughter in 1965. The indictment resulted from a confrontation with a man the officer found in a car with his wife. During an exchange of blows the man evidently fell against the car door and incurred a fatal head injury.

6. D.C.Code 1967 (Supp. IV, 1971).
   § 4-527. (1) Whenever any member is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty at any time after appointment and such injury or disease or aggravation permanently disables him for the performance of duty, he shall upon retirement for such disability, receive an annuity computed at the rate of 2 per centum of his basic salary at the time of retirement for each year or portion thereof of his service: *Provided*, That such annuity shall not exceed 70 per centum of his basic salary at the time of retirement, nor shall it be less than 66⅔ per centum of his basic salary at the time of retirement.

   (2) In any case in which the proximate cause of an injury incurred or disease contracted by a member is doubtful, or is shown to be other than the performance of duty, and such injury or disease is shown to have been aggravated by the performance of duty to such an extent that the member is permanently disabled for the performance of duty, such disability shall be construed to have been incurred in the performance of duty. The member shall, upon retirement for such disability, receive an annuity computed at the rate of 2 per centum of his basic salary at the time of his retirement for each year or portion thereof of his service: *Provided*, That such annuity shall not exceed 70 per centum of his basic salary at the time of retirement, nor shall it be less than 66⅔ per centum of his basic salary at the time of retirement.

performance of duty, a condition precedent to a service-connected disability annuity under the first subsection of § 4–527 of the Code.[7] In both cases, however, petitioners assert that their diseases, no matter how incurred, were aggravated by the performance of duty to the point of disablement, and hence under the second subsection, they were entitled to such an annuity.

But the wording of § 4–527(2) does not seem to sustain petitioners' position on the question of burden of proof. Even if we accept petitioners' premise that the original cause of their respective mental disorders is "doubtful", the second paragraph of the applicable section provides that an injury or disease must be *"shown* to have been aggravated by the performance of duty *to such an extent* that the member is permanently disabled for the performance of duty." (Emphasis supplied.) This language strongly suggests that it is up to the claimant, if original causation is obscure or concededly due to factors outside the service, to prove that his disease or injury was subsequently aggravated by events occurring in the line of duty.

Despite this language, petitioners argue that judicial construction of this section has established a rule to the contrary. They rely particularly on Blohm v. Tobriner, 122 U.S.App.D.C. 2, 350 F.2d 785 (1965), and Wingo v. Washington, 129 U.S.App.D.C. 410, 395 F.2d 633 (1968). At first blush, it does appear that certain observations in those opinions do lend support to petitioners' thesis. We have concluded, however, that neither decision, nor any of the others petitioners cited, is dispositive of the issues raised in the two cases before us.

In *Blohm,* a traffic officer was catapulted from his motorcycle in a collision which occurred in his pursuit of a speeding vehicle. He landed on his head, incurred a severe cerebral concussion which necessitated his being hospitalized for six months. Shortly after his return to duty he was bothered with recurring headaches and was ultimately involuntarily retired by the Board for disability not arising from the performance of duty.

In vacating this order, the court said:

Where it is the Police Department which initiates a proceeding to retire an officer against his will and for a disability which is alleged to be unrelated to his official service, the evidence of such lack of connection should clearly preponderate and be substantial and persuasive. Absent a record of which this can be said, the Department may be said to have failed to carry the burden fairly to be assigned to it under the statute. * * *

Crucial to the circuit court's decision was the fact—not present in either of the instant cases—that the original head injury occurred in the performance of duty. Also emphasized was a concession by the medical witness (upon whose testimony the Board relied for its finding that the headaches were not service-connected) that the possibility of retiree's condition stemming from the earlier concussion could not be ruled out. In short, all that the court held was that where a claimant makes a showing of a service incurred injury, the opposing side must then offer evidence disproving the logical inference that the ensuing disability was the long term result of such injury.

The opinion also discloses that the court interpreted only the first subsection of § 4–527, for it pointed out (122 U.S.App.D.C. 3, 350 F.2d at 786, n. 1) that the second subsection, with its requirement of a showing of aggravation caused by official duties, was not enacted until five days after the Commissioners had rejected Blohm's appeal. Yet it is the second subsection which we are asked to construe here.

The facts in *Wingo* more closely resemble those in the cases at bar, for there, the Retirement Board was also dealing with a problem of mental disorder in contradistinction to a physical injury. In remand-

---

7. Quoted in full in n. 6, *supra.*

ing an administrative order adverse to claimant, the court characterized its *Blohm* doctrine as providing an involuntary retiree with "presumptions of line-of-duty disability." Petitioners here rely heavily on this opinion to support their contention that the burden of proof is on respondents. In the absence of any explicit indication to the contrary, however, we conclude that the court in *Wingo*, like the court in *Blohm*, meant to restrict itself to the first subsection of 4–527. To do otherwise would bring the decision in *Wingo* into conflict with the language of the statute.

In *Wingo*, moreover, one of the factors attributed by claimant to his disabling emotional condition was the shooting and killing of a miscreant. It was conceded that this event, which might well have had lasting traumatic consequences, occurred in the officer's performance of duty. Thus the record in *Wingo* contrasts sharply with the factors asserted as aggravations of pre-existing mental conditions in the instant cases—emotional resentments to such normal incidents as reprimands, assignments to riot duty, policy decisions of superior officers on prosecution, and the like. We think it was within the competence of the Retirement Board to conclude that emotional outbursts occasioned by such matters were merely symptoms of a disease rather than products of aggravating causes.

It is also important to note that unlike retirement cases which have been reviewed by the federal courts of this jurisdiction, petitioners are before us under the provisions of the District of Columbia Administrative Procedure Act of 1968, Pub.L. 90–614, § 2, 82 Stat. 1204, D.C.Code 1967, §§ 1–1501 to 1–1510 (Supp. IV, 1971). The provisions for judicial review in this statute, which was not in effect when the *Blohm* and *Wingo* decisions were handed down, make it clear that when agency findings are assailed on evidentiary grounds, as petitioners have done in these cases, the test is whether the challenged findings are supported by "substantial" evidence, rather than by a "clear preponderance" of evidence.[8]

In No. 5634, the Board's conclusion was based on a subsidiary finding that there were "no incidents or duty related circumstances during his service which would cause or aggravate [Johnson's] disabling condition"; and in No. 5635 that "the evidence clearly and persuasively established the lack of any connection between Officer Paxton's disability and his official service". As the record reveals that neither finding, nor the final conclusions, are unsupported by substantial evidence, we affirm.

We have considered petitioners' other contentions but discover in them no basis for modifying or setting aside the agency orders.

Affirmed.

---

8. D.C.Code 1967, § 1–1510(3) (E) (Supp. IV, 1971).