**Gerald B. CARROLL, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF APPEALS AND REVIEW, Respondent.**

**No. 6085.**

District of Columbia Court of Appeals.

Argued Feb. 8, 1972.

Decided June 30, 1972.

Carleton U. Edwards, II, Silver Springs, Md., with whom Benjamin Greenspoon, Washington, D. C., was on the brief, for petitioner.

Earl A. Gershenow, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

Before KELLY, FICKLING and YEAGLEY, Associate Judges.

KELLY, Associate Judge:

Petitioner seeks review of a decision of the District of Columbia Board of Appeals and Review, adopting the findings of the Police and Firemen's Retirement and Relief Board, whereby he was retired from the White House Police (now the Executive Protective Service) for a disability not incurred in or aggravated by the performance of duty pursuant to D.C.Code 1967, §

4–526.[1] He does not contest the finding that he has become disabled for police duties but contends that he should have been retired for a disability either incurred in or aggravated by the performance of duty pursuant to D.C.Code 1967, § 4–527(1) or (2) (Supp. IV, 1971).[2] We affirm.

In August of 1970, retirement proceedings were instituted against Officer Carroll on the basis of a recommendation by a police psychiatrist that Carroll was suffering from an "explosive personality with poor impulse control", and that he had developed a "fixed paranoid attitude" toward a superior officer and could not be rehabilitated for work as a policeman. A hearing was held before the Police and Firemen's Retirement and Relief Board at which it was adduced that Carroll had become very upset at work and "blacked out", going into a violent rage and attempting to destroy personal property until subdued by fellow officers. He was admitted to the psychiatric unit of George Washington University Medical Center as an acute emergency case and remained in the hospital for five days. Following his release he continued to receive psychiatric care.

The incident which triggered Carroll's violent reaction was a reprimand by a superior officer for a minor infraction, i. e., taking an extra four minutes on a rest break. Carroll exploded when he was told to sign the dereliction of duty book for this infraction.

Dr. Frank, a police psychiatrist, testified that Carroll's explosive personality was a lifelong personality trait which would make a person more prone than others to respond in a negative or unpredictable way to undue stress. The officer's tensions were said to have been built up over the years, and were found by Dr. Frank to be related to his sorrow over the death of his mother, his ambivalent feelings toward his father, his financial difficulties, and his job problems. The Retirement Board also considered the report of Dr. McGovern, a psychologist, which stated that Carroll had "an unresolved problematic relationship with his father which he probably transferred on to his two superiors whom he felt treated him as did his father . . . and when he felt that he was treated this way by his two superiors he took it for some time but then exploded because he essentially felt that he was not being treated like a man."

Officer Carroll testified that he had been an Army paratrooper for three years prior to joining the Metropolitan Police in 1963, and that he had transferred to the White House Police in 1966. He stated

1. § 4–526. Retirement for disability not incurred in performance of duty.

Whenever any member . . . completes five years of police or fire service and is found by the Commissioners to have become disabled due to injury received or disease contracted other than in the performance of duty, which disability precludes further service with his department, such member shall be retired on an annuity [computed at a certain rate] . . . .

2. § 4–527. Retirement for disability while performing or not performing duty.

(1) Whenever any member is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty at any time after appointment and such injury or disease or aggravation permanently disables him for the performance of duty, he shall upon retirement for such disability, receive an annuity [computed at a certain rate] . . . of his basic salary at the time of retirement . . . .

(2) In any case in which the proximate cause of an injury incurred or disease contracted by a member is doubtful, or is shown to be other than the performance of duty, and such injury or disease is shown to have been aggravated by the performance of duty to such an extent that the member is permanently disabled for the performance of duty, such disability shall be construed to have been incurred in the performance of duty. . . .

that he was given a psychiatric evaluation before entering the police department, and was all right at that time. During his ten years of army and police service he performed his duties without exhibiting psychiatric or disciplinary problems. He also expressed feelings of mounting dissatisfaction with his job because he believed his superiors were treating him unfairly and were out to get him.

On the basis of the evidence presented, the Retirement Board found that Carroll's disabling condition had not been caused or aggravated by the performance of police duties so as to bring his retirement within the scope of D.C.Code 1967, § 4–527(1) and (2) (Supp. IV, 1971). Job problems were not entirely discounted but were specifically found to be minimal as compared with Carroll's family and financial problems. The Board of Appeals and Review, after a hearing, adopted the findings of the Retirement Board and sustained its order.

Petitioner contends that where a policeman is retired against his will, the police department has the burden of showing that the disability which necessitates the retirement is not service-connected. His argument is based on the liberal construction generally accorded to retirement statutes,[3] and on the legislative history of § 4–527(2).[4] The same question was raised unsuccessfully in the recent case of Johnson v. Board of Appeals and Review,[5] but we later noted that the statement of legislative intent raises a serious question of "apparent conflict between the legislative history of D.C.Code 1967, § 4–527(2) (Supp. IV, 1971), and this court's decision in Johnson v. Board of Appeals and Review".[6] It is not necessary that we resolve that conflict at this time, however, for the Board of Appeals and Review put that burden on the government, affirmatively finding in its decision "that the District of Columbia has carried its burden of showing that the Officer's disability resulted from causes other than performance of police duty."

■ Petitioner complains that the Assistant Corporation Counsel who sat as a member of the Retirement Board when his case was heard also acted as counsel on behalf of the District of Columbia at the later hearing before the Board of Appeals and Review. However, in the absence of any showing that petitioner was prejudiced thereby, this combination of functions did not constitute error.

Organization Order No. 12, which appears in the Appendix to D.C.Code 1967, title 1 (Supp. V, 1972), states that the Police and Firemen's Retirement and Relief

3. *See* Wingo v. Washington, 129 U.S.App. D.C. 410, 395 F.2d 633 (1968); Blohm v. Tobriner, 122 U.S.App.D.C. 2, 350 F.2d 785 (1965); Hyde v. Tobriner, 117 U.S.App.D.C. 311, 329 F.2d 879 (1964); Bradley v. City of Los Angeles, 55 Cal. App.2d 592, 131 P.2d 391 (1942).

4. "The purpose of this legislation is to create an additional category of service-connected disability which will enable the member to retire if an injury or disease contracted other than exclusively in the performance of duty is so aggravated by the performance of duty as to disable the member from further duty, and to place the burden of proof on the Government that such duty did not aggravate the injury or disease contracted (it may or may not have been incurred or contracted in the performance of duty).

"Such legislation is comparable to and in keeping with industrial compensation procedures." H.R.Rep.No.892, 87th Cong., 1st Sess. 1 (1961). The language relating to the burden of proof on the part of the Government was omitted from the Senate report.

5. D.C.App., 282 A.2d 566 (1971).

6. Brewington v. District of Columbia Board of Appeals and Review, D.C.App., 287 A.2d 532, 534 (1972).

Board is to include among its members either the Corporation Counsel or one of his senior assistants. Organization Order No. 112, which established the Board of Appeals and Review, specifies in Section B(3) (a) that no member of this body shall be an employee of the District of Columbia in the Office of the Corporation Counsel. Members of the staff of the Corporation Counsel may, however, on the request of the Chairman or the presiding officer of a hearing committee, give an opinion on any question of law involved in a case before the Board (Section C(2) (e)), assist the Board in putting into proper form its findings of fact, conclusions of law, and decisions (Section C(2) (f)), or represent the District of Columbia in proceedings before the Board (Section C(3)). And while, hypothetically, a situation could arise within this framework which would raise serious due process questions, we are not faced with such a situation here.

■ Finally, we must reject petitioner's contention that the evidence does not support the findings made by the Board. Using the substantial evidence test as the proper scope of our review, under the District of Columbia Administrative Procedure Act,[7] it is our opinion that there were sufficient evidentiary facts in the record to support the decision of the Board that petitioner's "acute episode while on duty was not an aggravating factor but rather was a manifestation of his existing illness, a personality disorder that had become disabling prior to that time."[8]

Affirmed.

---

7. D.C.Code 1967, §§ 1–1501 to 1–1510 (Supp. V, 1972). *See* Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947).

8. In Johnson v. Board of Appeals and Review, D.C.App., 282 A.2d 566, 571 (1971), the claimed aggravating factors were "emotional resentments to such normal incidents as reprimands, assignments to riot duty, policy decisions of superior officers on prosecution, and the like." This court there concluded that it was within the competence of the Retirement Board to conclude that emotional responses to such normal events were symptoms of disease rather than products of aggravating causes.