Patrick K. MONEY, Raymond McClellan, Oliver Hillman, Norman Clements, Lonnie Turner, James W. Kegley, and Rita V. Head, Petitioners,

v.

Maurice J. CULLINANE, Chief of Police, Metropolitan Police Department, et al., Respondents.

Nos. 10633, 10634, 10635, 10636, 10637, 10715 and 10730.

District of Columbia Court of Appeals.

Argued Sept. 13, 1977.

Decided Oct. 11, 1978.

Charles H. Schulze, Washington, D. C., for petitioners.

Margaret L. Hines, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the brief was filed, Louis P. Robbins, Acting Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondents.

Before KERN, NEBEKER and HARRIS, Associate Judges.

KERN, Associate Judge:

Petitioners are District of Columbia police officers who unsuccessfully applied to the Metropolitan Police Department (Department) to be placed on administrative leave rather than expend their sick leave for the periods of time they were absent from duty because of illness or injury. 5 U.S.C. § 6324(a) (Supp. V 1975), provides that when District police cannot perform their duties as a result of service-connected injury or illness they are entitled to administrative leave. They have now filed in this court petitions for review of the Department's rulings denying them administrative leave; the Department has responded that this court is without jurisdiction to review their petitions.

Congress has provided the Department shall act to place its officers on administrative leave "under the regulations prescribed by . . . the District of Columbia Council." 5 U.S.C. § 6324(b)(1) (1971), as amended (Supp. V 1975). Since the Council has prescribed no regulations, we necessarily turn to the regulations issued by their predecessors, the Commissioners of the District of Columbia, which provide that all absences from duty "must be approved by the Chief" and "he may redelegate to senior

officials . . . the powers [so] . . delegated." Board of Commissioners of the District of Columbia, Order No. 65–528 para. 2, 5 (April 15, 1965). The Chief has established by general order a procedure for the Department to determine requests for administrative leave when officers are absent because of illness or injury they have purportedly suffered in the line of duty. The Chief's delegate, who is assigned to the Police and Fire Clinic, reviews (1) the official report of the incident resulting in the officer's absence from duty, (2) medical reports and records concerning the absent officer, and (3) the officer's Departmental personnel record. There is a second-stage of this administrative process; if the officer chooses, he may himself review the material considered by the inspector and then (a) submit additional material and (b) meet in the company of his attorney with the inspector. The inspector is then required to render in writing his decision on the leave request.

Petitioners argue that the Department's decisions on these applications for administrative leave are directly reviewable by this court and the procedure followed by the Department does not comply with the District of Columbia Administrative Procedure Act, D.C.Code 1977 Supp., § 1–1501 et seq. We have jurisdiction to review, however, only if the Department's proceeding culminating in the grant or denial of their leave requests is a "contested case" within the meaning of the DCAPA and we note that Section 1502(8) provides that a contested case "shall not include . . . (B) the selection or tenure of an officer or employee of the District."

This court recently discussed the scope of the "selection or tenure" clause of the DCAPA and found:

> [T]he Congressional purpose to exclude "administrative determinations traditionally nonsusceptible to application of the process of adjudication" from the definition of a "contested case." If every decision to transfer a government employee from one position to another were subject to the "contested case" procedural requirements and direct review by this court, government agencies would be unable to make the daily employment decisions which are an inherent part of efficient administration. The philosophy underlying the employee "selection or tenure" exclusion was summarized by Professor Davis when he asked:
>
> > Do we want courts inquiring into personnel management—salary increases, sick leave, office hours, allocation of parking spaces in the basement of the agency's building? [4 K. Davis, Administrative Law Treatise § 28.16, at 82 (1958).]
>
> [Wells v. District of Columbia Board of Education, D.C.App., 386 A.2d 703, 706 (1978).]

While this court in Wells was dealing specifically with the position transfer of an employee of the executive branch, we are persuaded that leave requests in the instant case are also facets of personnel management and encompassed within the statutory term "selection or tenure."

Our decision in Johnson v. Board of Appeals and Review, D.C.App., 282 A.2d 566 (1971), does not require us to hold otherwise; there, two former District employees (police officers) challenged a ruling by the Police and Firemen's Board which fixed the disability allowance to be paid them in retirement. We properly rejected the District's argument that this court lacked jurisdiction to review such ruling on the ground that the statutory term "tenure" shall be interpreted to include " 'tenure of retirement', that is, the 'manner or means of holding' retirement rights." Id. at 568. The agency in Johnson was determining retired employees' pensions; here, the Department was deciding employees' leave requests.[1]

---

1. It should be noted parenthetically that any District law enforcement officer who, as a result of illness or injury, is ultimately retired on disability and at that time urges his disability was service-connected, receives a complete de novo hearing before the Retirement Board on the cause of the disability. Any prior determination by the inspector on an administrative

In sum, the Department's determination that petitioners were not entitled to administrative leave is a decision of day-to-day government personnel management which Congress has expressly deemed not a contested case and hence not subject to this court's review.[2]

The petitions for review are dismissed since we lack jurisdiction to entertain them.

*So ordered.*

NEBEKER, Associate Judge, concurring:

While I concur in the judgment and opinion of the court, I am constrained to offer two observations. First, the court has not decided whether, absent exclusion by reason of the "selection or tenure" provision of D.C.Code 1973, § 1–1502(8)(B), these cases would have been "contested" cases within the basic meaning of that section—*i. e.,* "proceeding[s] . . . in which the legal rights, duties, or privileges of specific parties are required by any law (other than this chapter), or by constitutional right, to be determined after a hearing . . . ." *Id.* § 1–1502(8). Second, by construing the "selection or tenure" exclusion to include all "day-to-day government personnel management" decision (text accompanying note 2, *ante*), we necessarily hold that the applicability of the exclusion does not depend upon the absence of a requirement that decisions made within the scope of the exclusion be made in accordance with the traditional forms of fair procedure, as embodied in the DCAPA. Our jurisdiction to review administrative decisions, in other words, is not as extensive as the constitutional mandate that those decisions be made in accordance

with the requisites of procedural due process.

In this context it is, as in *Wells v. District of Columbia Board of Education*, D.C.App., 386 A.2d 703 (1978), unnecessary to our decision that we reach the issue of whether petitioners in these cases were afforded the procedural due process to which they were entitled. Such strict necessity aside, however, I believe that, in the context of these cases, the interest of judicial economy would dictate that we reach that issue; for the issue has been extensively briefed and argued before this division and, as a result of today's decision, will necessarily recur before the Superior Court.[1] Therefore, while my concurrence with the opinion of the court is full, I offer the following additional views with respect to the due process issues raised.

I

Before discussing the legal issues presented, I believe that a fuller statement of the relevant facts is necessary. Petitioners were each sick or injured while employed by the Metropolitan Police Department. By statute, the absence of a member of the Department as a result of duty-related illness or injury is not chargeable to the leave account of that member. 5 U.S.C. § 6324(a) (Supp. V 1975). If, however, a member is absent for illness or injury which is not duty-related, the member's accrued sick leave account, augmented by up to 240 hours of advanced sick leave, is charged for the absence. General Order 206.2, para. I.B. 1 (1975). Upon exhaustion of this sick

leave request by that officer would have no effect on the Board's subsequent decision when the same officer sought disability retirement.

**2.** Our comment in *Wells v. D. C. Bd. of Ed., supra* at 706, seems also applicable here:

We hold that the exclusion of employee "selection or tenure" matters from the definition of a "contested case" encompasses personnel decisions transferring employees within the agency. This holding does not mean that all such decisions are unreviewable. It does mean, however, that:

individuals considering themselves aggrieved, in a judicially cognizable sense, always have

access to the trial court for review in an original proceeding (*e. g.*, prohibitory injunction, mandatory injunction and declaratory judgment). [*Dupont Circle Citizen's Ass'n v. District of Columbia Zoning Commission*, D.C.App., 343 A.2d 296, 308 (1975) (en banc) (Gallagher, J., concurring) (footnote omitted).]

**1.** Petitioner Money, for example, is now before this court on appeal from the dismissal for lack of subject matter jurisdiction of his action in the trial court which also sought relief from the adverse administrative decision. Docket No. 10740.

leave, the member's accrued ordinary leave account is charged. Upon exhaustion of this account, the member is placed in a leave without pay status until able to return to duty. While in this status, the member remains subject to departmental regulations, including a prohibition against engaging in other employment. General Order 1001.1, para. I.E. 8 (Rev. 12/7/75).

The statute which provides the right to administrative leave also provides the means by which the finding necessary to that right—illness or injury in the line of duty—is to be made: "under regulations prescribed by . . . the District of Columbia Council . . ." or, under the former version of the statute, by the Commissioners of the District of Columbia. 5 U.S.C. § 6324(b) (1970), *as amended* (Supp. V 1975). The Commissioners, acting under the former version of the statute, provided that all absences from duty (whether or not duty-related) "must be approved by the Chief of [Police]" and that the Chief may "redelegate to senior officials of [the department] the powers herein delegated." Board of Commissioners of the District of Columbia, Order No. 65–528, para. 2, 5 (April 15, 1965).

The Chief of Police has established the following procedures by general order. The initial determination of whether an injury or illness was incurred in the line of duty is made in writing by an inspector assigned to the Police and Fire Clinic after review of an investigative report of a police official, medical reports and records, and additional data from the member's personnel records. Should the determination be unfavorable to the member, he may seek review of the decision by the inspector, during which the member may inspect the entire file of data and may submit additional information relevant to the issue. The subsequent written decision by the inspector is final. General Order No. 1001.1, para. II.A. 6, 7 at 18 (Rev. 7/31/72). In addition to these procedures, it appears that, by custom, the member may, in seeking review of the initial determination, have the assistance of counsel at an informal meeting with the inspector. He may not, however, confront witnesses adverse to his cause, nor is a record made of this meeting.

## II

Upon these facts, the issues presented in this appeal (but not reached by the court) are whether petitioners were accorded their constitutional[2] due process rights in the Departmental proceedings and, if not, what remedy is appropriate.

It is fundamental that "some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *citing Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Final deprivation of the interest, for the purposes of the hearing requirement, need not finally determine the rights of the parties, however. If the property interest is denied for a significant period, for example, before a final adjudication of the rights of the parties, due process requires that there be an opportunity for a hearing "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), *quoted with approval in Mathews v. Eldridge, supra,* 424 U.S. at 333, 96 S.Ct. 893. The questions presented therefore, are whether the administrative decisions made in this case effected final deprivations of property interests sufficient to require a hearing and, if so, whether the hearing provided was adequate for this purpose.

The typical immediate effect of a decision of the kind made in this case is merely a bookkeeping entry that the member is no longer credited with a certain amount of leave, for usually the member will have accrued sick or annual leave and may be advanced sick leave to cover an absence. The member receives precisely the same benefits he would have received had he been granted administrative leave, except

2. Petitioners do not assert, nor have they developed a record to demonstrate, that the current practice of affording a limited hearing before the inspector is "required by law."

that any medical expenses incurred must be borne by him rather than by the Department.[3] Given the general availability of government subsidized group health insurance, I think it reasonable to conclude that there is no substantial immediate deprivation.

An adverse decision in such circumstances might, however, deprive the member of a substantial property interest in the future. Thus, for example, leave used as a result of an adverse decision will be unavailable to the member should he again become ill or injured before having again accrued sufficient leave resources to cover his absence. And should the member elect to retire under the provisions of D.C.Code 1973, § 4–528 (retirement after twenty years service), sick leave used as a result of an adverse determination will be unavailable to supplement his retirement annuity. *See id.* § 4–528(4). Such deprivations will occur, however, if at all, only upon the occurrence of a subsequent event, such as a subsequent illness or injury or an election to retire under the provisions of § 4–528.[4]

Finally, the member may be deprived of a substantial property interest as a direct and relatively immediate result of such an adverse decision. This will occur where, either because of the duration of the member's incapacity or because of limited leave resources, the member is required to take leave without pay during all or part of his absence.[5] In this situation, the member loses substantially all the benefits of employment while remaining subject to the Departmental prohibition against engaging in other employment.[6] Although this may be an atypical situation, the deprivation occurs as a direct and proximate result of the adverse decision.

Respondents argue that, under *Mathews v. Eldridge, supra,* the procedural safeguards accorded petitioners are constitutionally adequate. *Mathews* is, in some respects, analogous to this case. Here, as in *Mathews,* the typical immediate effect of an erroneous administrative decision is not to "deprive an eligible [claimant] of the very means by which to live," the situation in *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). Rather, as in *Mathews,* petitioners typically have collateral resources—*i. e.,* accrued sick and annual leave and advanced sick leave—which assure that an erroneous decision does not have the immediate impact of a final and adverse determination of entitlement.

I agree that, for the limited immediate impact of the typical case, the safeguards accorded petitioners are adequate under *Mathews.* But, as noted, the potential impact of the type of decision made in these cases extends beyond the mere bookkeeping entry involved in the typical case. In *Mathews* the only issue before the court was "what process is due prior to the *initial* termination of benefits, *pending review.*"[7] 424 U.S. at 333, 96 S.Ct. at 902 (emphasis added). The claimant's "[C]onstitutional challenge [was] entirely collateral to his substantive claim of entitlement." *Id.* at 330, 96 S.Ct. at 900. In the instant case, on

---

3. General Order No. 1001.1, para. I.B.2 (Rev. 3/2/73), provides that the Department shall not be responsible for the payment of costs incurred in the treatment of an illness or injury which is sustained while "off-duty." It appears, however, that "off-duty," in this context means not duty-related. *See id.* para. I.F.2.d. *See also* D.C.Code 1973, § 4–525 (payment of medical expenses which are duty-related).

4. There is no statutory provision for supplementation of retirement annuities under other retirement options. *See* D.C.Code 1973, §§ 4–526 (disability retirement), –527 (duty-related disability retirement).

5. At least one petitioner in this case is asserted to have been required to take leave without pay as a direct result of an adverse determination. Other consequences might be similarly direct and immediate, but none appears of record.

6. While it is conceded in this case that each petitioner was disabled for duty, such disability need not necessarily imply disability for all employment.

7. In *Mathews,* the initial termination decision was subject to review de novo at two subsequent administrative stages, one of which was "non-adversary," and review of the administrative record in judicial proceedings. 424 U.S. at 339, 96 S.Ct. 893.

the other hand, there exists no further administrative or statutorily provided judicial proceeding by which petitioners' claims of entitlement may be reviewed. Absent such review, the rights adjudicated by the administrative decision in the typical situation will ripen into a final determination of entitlement. Petitioners' challenge, therefore, directly involves their "substantive claim[s] of entitlement" as well as the collateral attack upon the interim decision resolved by reference to *Mathews.*

Where, as here, the administrative decision effects a final determination of rights, there must be a hearing of some kind. *Mathews v. Eldridge, supra* at 333, 96 S.Ct. 893; *Wolff v. McDonnell, supra* 418 U.S. at 557–58, 94 S.Ct. 2963. Where the rights of specific parties are adjudicated, rather than the rights of a class legislated, there must be a prior "trial type hearing." *Chevy Chase Citizens Association v. District of Columbia Council,* D.C.App., 327 A.2d 310, 314 (1974) (en banc). The requirement that there be a "trial type hearing" does not necessarily require that that hearing include the full panoply of procedural safeguards in their traditional forms.[8] "Due process sometimes requires a trial type of hearing but allows the relaxation of one or more attributes of such a hearing." K. Davis, Administrative Law Treatise, § 7.01 at 408 (1958) (footnote omitted).

Relaxation of these attributes, however, must be upon the explicit authority of the appropriate branch of government. In *Greene v. McElroy,* 360 U.S. 474, 508, 79 S.Ct. 1400, 1419, 3 L.Ed.2d 1377 (1959), the Court held that

> traditional forms of fair procedure [may] not be restricted by implication or without the most explicit action by the Nation's lawmakers, even in areas where it is possible that the Constitution presents no inhibition.

*Cf. Cafeteria Workers v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) (where the same action disapproved in *Greene* was approved when undertaken pursuant to the explicit authority of the President as commander-in-chief of the armed forces). In the instant case, however, the contraction of the traditional forms of fair procedure was undertaken upon the authority of the Chief of Police to "approve" all absences from duty, whether or not the absence was duty-related. This was the only authority delegated pursuant to the congressional mandate that the Council or Board of Commissioners prescribe "regulations" for determining whether an illness or injury occurred in the line of duty. To construe this authority as relating to final decisions of this nature rather than simply departmental "approval" of the absence would be to permit the restriction by implication condemned in *Greene.* I would not necessarily conclude that the instant procedures, had they been made explicitly applicable to final determinations of the rights under the statute, would be inadequate in safeguarding petitioners' rights. *See, e. g.,* 5 U.S.C. §§ 8124(b)(2), –8128(b) (1970) (decision by Secretary of Labor to grant or deny compensation for work-related injury is neither subject to procedural safeguards of federal APA nor reviewable by any court). But, absent such explicit action, I would hold that the procedures accorded are not valid for a final adjudication of petitioners' rights.

Because the existing departmental procedures are inadequate for a final determination of petitioners' rights, procedures similar to those established by the DCAPA, which conform to the traditional forms of fair procedure, are required.

### III

I turn now to the rights of these petitioners. None of the petitioners in this case has

---

8. The traditional forms of fair procedure include timely and adequate notice, an "opportunity to defend" through cross-examination of adverse witnesses, an opportunity to present evidence and to argue the case orally, the assistance of counsel, an impartial decision maker, a decision based solely upon the evidence, and a reasoned statement of decision. *Goldberg v. Kelly, supra,* 397 U.S. at 266–71, 90 S.Ct. 1011; *Mathews v. Eldridge, supra,* 424 U.S. at 325 n. 4, 96 S.Ct. 893.

been accorded the procedural safeguards which are necessary for final adjudication of their property interests "in a meaningful manner." *Armstrong v. Manzo, supra,* 380 U.S. at 552, 85 S.Ct. 1187. Unless, upon further administrative proceedings, entitlement to those rights might be redetermined "at a meaningful time," *id.,* as well as in a meaningful manner, petitioners would be entitled to reinstatement to their former positions, for a deprivation without due process is, in contemplation of the law, a nullity. *See e. g., Thomas v. Ward,* 529 F.2d 916, 920 (4th Cir. 1975).

The administrative decisions made in these cases may have, as noted in Part II, *supra,* three distinct effects upon the property interests of ill or injured members. First, there may be merely a bookkeeping notation that the member's leave account is to be charged for an absence. The procedures established by the Department are adequate for this purpose since only a future deprivation, if any, is reasonably to be expected. Second, the determination may effect an actual deprivation when, in the future, the member may require the use of leave expended as a result of this determination. As to such effects, the Department cannot reasonably be expected to determine, of its own initiative, at what point in time, if any, a full hearing might be required to assure that the member is heard "at a meaningful time." It would, therefore, be reasonable for the Department to expect that, subsequent to its initial determination of ineligibility for administrative leave, the member would request a full hearing in which his entitlement would be redetermined.[9] Third, the administrative decision may have the relatively immediate effect of requiring the member, upon exhaustion of his leave resources, to take leave without pay for the injury or illness·

claimed to be duty-related. In such cases, the procedures presently prescribed are an adequate means by which to safeguard the respective rights of the member and the Department pending further review.[10] But the member, faced with imminent loss of pay, must in these circumstances be assured of timely review of the interim decision. Absent such timely review, the member's rights will become determined by the loss of his pay. A procedurally fair and full hearing, therefore, would be required before the member may be placed in a leave without pay status.

It is apparent from the records, briefs, and argument in this case that most of the petitioners here were affected only to the extent of a bookkeeping entry or upon the occurrence of a subsequent and unrelated event. As to these petitioners, I am confident that a redetermination of their claims, if demanded, would afford them the opportunity to be heard at a meaningful time as well as in a meaningful manner. It was asserted at argument, however, that one or more of the petitioners in the instant case were required to take leave without pay as a direct result of the adverse administrative decision.[11] As to these petitioners, the absence of procedures assuring a full, fair, and timely redetermination of their claims, coupled with the loss of pay, constituted a deprivation of a substantial property interest, in derogation of their contracts of employment, without due process. A full and fair redetermination of their claims on remand will not serve to rectify the absence of such procedures at a meaningful time. These petitioners, therefore, are entitled to full compensation for all wages lost as a result of their absences due to the allegedly duty-related illnesses or injuries involved in

---

9. It would, of course, be within the province of the Department to fix a limitation upon such claims by requiring that the demand be made within a reasonable period after the initial decision is rendered.

10. The Department, by its own regulations, is required to commence immediately the process leading to initial determination whenever the affected member has 160 or fewer hours of

accrued sick leave. General Order No. 206.1, para. III.A.9.b(3).

11. In these cases there existed no procedures by which, prior to filing a petition for review in this court, the consequences of an adverse administrative decision could be made a matter of record.

this case.[12]  5 U.S.C. §§ 5596(a)(5), (b)(1). *See Thomas v. Ward, supra; Soni v. Board of Trustees,* 513 F.2d 347 (6th Cir. 1975); and *Saltzman v. United States,* 161 Ct.Cl. 634 (1963).

12.  The ordinary rule respecting mitigation of damages through alternative employment has no application here in view of the proscription against outside employment, General Order No. 1001.1, para. I.E.8 (Rev. 12/7/75).