UNITED STATES of America, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD
OF ZONING ADJUSTMENT,
Respondent.

Coordination Council For North American Affairs, and Dupont Circle Citizens Association, Intervenors.

No. 88–AA–1325.

District of Columbia Court of Appeals.

Argued May 14, 1991.
Decided Feb. 28, 1994.

John P. Schnitker, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen. at the time the brief was filed, Elizabeth R. Rindskopf, Principal Deputy Legal Adviser, Gilda Brancato, Attorney–Adviser, Office of the Legal Adviser, Ronald S. Mlotek, Chief Counsel, Office of the Foreign

Missions, Dept. of State, Jay B. Stephens, U.S. Atty. at the time the brief was filed, and Michael Jay Singer, Atty., Dept. of Justice, were on the brief, for petitioner.

James C. McKay, Jr., Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles Reischel, Deputy Corp. Counsel, were on the brief, for respondent.

Richard B. Nettler was on the brief, for intervenor, Dupont Circle Citizens Ass'n.

Mark N. Bravin, with whom Markham Bail and David D. Chow, were on the brief, for intervenor, Coordination Council for North American Affairs.

. Before TERRY, and WAGNER, Associate Judges, and MACK, Senior Judge.

WAGNER, Associate Judge.

After this case was argued on the merits, petitioner, United States of America, filed a motion to dismiss its petition for review of a decision of the Foreign Missions Board of Zoning Adjustment (FM–BZA) and to remand the case to the FM–BZA with instructions to dismiss the case as moot. Respondent, District of Columbia, and the intervenor, Dupont Circle Citizens Association (the Association), oppose petitioner's motion on the ground that this court lacks jurisdiction to review the decision of the FM–BZA because it is not a "contested case" within the meaning of the D.C. Administrative Procedure Act, D.C.Code §§ 1–1501, –1510 (1992) (DCAPA).[1] Alternatively, the District argues that, assuming this court has jurisdiction, the mootness doctrine should not be

applied because the deliberate action of the losing party, intervenor, Coordination Council for North American Affairs (CCNAA), rendered the case moot and because the case involves important issues pertinent to the resolution of a class of future cases.[2] We dismiss for lack of jurisdiction.

Petitioner sought review of an order of the District of Columbia Board of Zoning Adjustment, which was specially constituted as the FM–BZA,[3] disapproving the application of the Defense Procurement Division of the CCNAA, an unofficial instrumentality established by the people of Taiwan, to locate a "chancery" facility at 1701 18th Street, N.W. in the District of Columbia.[4] The District argues that the petition must be dismissed on jurisdictional grounds because the proceeding before the FM–BZA is by statute not an adjudication of a "contested case" under the DCAPA, which limits our jurisdiction to such cases.

■ Pursuant to D.C.Code § 11–722 (1989), this court has jurisdiction to review decisions and orders of District of Columbia agencies in accordance with the DCAPA. The DCAPA limits this court's direct review of such decisions and orders to those arising out of contested cases. D.C.Code § 1–1510 (1992); *Communication Workers of Am., Local 2336 v. District of Columbia Taxicab Comm'n,* 542 A.2d 1221, 1222 (D.C.1988); *Donnelly Assocs. v. District of Columbia Historic Preservation Review Bd.,* 520 A.2d 270, 276 (D.C.1987). The term "contested case" is defined by statute, in pertinent part, as "a proceeding before the Mayor or any agency in which the legal rights, duties, or

1. The District and Dupont Circle Citizens Association, (also an intervenor before the agency), raised the jurisdictional issue originally by motions and subsequently addressed the issue in their briefs and arguments.

2. The District also takes the position that it is not clear factually that the case is moot.

3. When the Board of Zoning Adjustment performs functions concerning an application by a foreign mission for location of a chancery, its membership is reconstituted pursuant to statute to include either the Director of the National Park Service or another Federal official specially designated by the President of the United States. 22 U.S.C. § 4306(i) (1988); D.C.Code § 5–1206

(1988). As such, the body is known as the FM–BZA.

4. In prior proceedings involving CCNAA's application, this court ruled that under section 4 of the Taiwan Relations Act (22 U.S.C. §§ 3303–3316 (1987)) "any zoning application by CCNAA must be treated under the same substantive provisions of the Foreign Missions Act [22 U.S.C. §§ 4301–4316 (1988); *see also* D.C.Code §§ 5–1201, –1213 (1988)], coupled with the applicable zoning regulations, as would an application for a chancery use." *Dupont Circle Citizens Ass'n v. Board of Zoning Adjustment,* 530 A.2d 1163, 1172 (D.C.1987).

privileges of specific parties are required by any law (other than this subchapter), or by constitutional right to be determined after a hearing...." D.C.Code § 1–1502(8) (1992). This court has interpreted the nature of the hearing referred to in the contested case definition to be "a trial-type hearing where such is implicitly required by either the organic act or by constitutional right...." *Donnelly,* 520 A.2d at 277; *Chevy Chase Citizens Ass'n v. District of Columbia Council,* 327 A.2d 310, 314 (D.C.1973). To meet the jurisdictional requirement, " 'the hearing must be adjudicatory, rather than legislative in nature.' " *Donnelly,* 520 A.2d at 276 (quoting *W.C. & A.N. Miller Dev. Co. v. District of Columbia Zoning Comm'n,* 340 A.2d 420, 422 (D.C.1975) (en banc)).

▮▮▮ Regulation of the location of foreign missions in the District of Columbia is subject to the provisions of the Foreign Missions Act, 22 U.S.C. § 4301, *et seq.* (1988) (FMA); *see also* D.C.Code §§ 5–1201, –1213 (1988). The FMA was enacted to address an imbalance between the treatment of missions in this country and those abroad. S.REP. No. 329, 97th Cong., 2d Sess. 1 (1982), *reprinted in* 1982 U.S.C.C.A.N. 714 (Senate Report); *see also Embassy of the People's Republic of Benin v. District of Columbia Bd. of Zoning Adjustment,* 534 A.2d 310, 314 (D.C.1987). The law was intended to create a mechanism to assure the protection of the interest of the United States, while giving due consideration to local concerns. Senate Report at 714–17. Section 206 of the FMA, also codified at D.C.Code § 5–1206 (1988), governs the procedure by which chanceries are permitted to

locate or expand in the District of Columbia. *See also Benin,* 534 A.2d at 316–17. This section of the statute explicitly provides that the proceedings shall be of a "rule-making and not of an adjudicatory nature." D.C.Code § 5–1206(f); 22 U.S.C. § 4306(f).

The legislative history of the FMA only reinforces the intention that the proceedings under it be of a rulemaking nature, as the plain language of the statute makes clear. The Senate report on the section which ultimately became § 206(f) (D.C.Code § 5–1206(f)) reported the following:

Section 206(d) requires that rulemaking procedures under the District of Columbia Administrative Procedure Act will be applicable to such determinations in a manner consistent with this Act. Among other things, this insures notice and opportunity to comment for interested members of the public. While public hearings are not required, the committee expects that they will be held when necessary to insure adequate public comment.

Senate Report at 726.[5] Similarly, the House Conference Report on the legislation discusses the rulemaking character of the hearings and their purpose as follows:

Section 206(f) provides that proceedings concerning chanceries under this section would be conducted under a rulemaking and not in an adjudicatory procedure. This will provide a process compatible with the conduct of diplomatic relations between the sovereign nations involved, and the participation of their diplomatic representatives in these proceedings. Such rulemaking procedures are currently em-

---

5. In discussing § 206(e), which sets forth the criteria for determinations by the Foreign Missions Commission, the report states:

The Commission will be authorized to and is expected to require hearings that will allow all interested parties, public and private, including neighborhood associations, to present their views. In addition, the committee notes that similar hearings have been held by the National Capital Planning Commission, in connection with proposed modifications to the Comprehensive Plan.

Senate Report at 726. With respect to hearings before the National Capital Planning Commission on proposed revisions to the Comprehensive Plan, the statute provides in pertinent part as follows:

The Commission may, in addition and at its discretion, periodically provide opportunity by public hearings, meetings, or conferences, exhibitions and publication of its plans, for review and comments by nongovernmental agencies or groups, and, in consultation with the District of Columbia Council, encourage the formation of 1 or more citizen advisory councils.

D.C.Code § 1–2003(c)(1) (1992). Local regulations governing the planning process include a provision for the Council of the District to schedule public hearings and to submit its findings and copies of the public testimony to the Mayor. 10 DCMR § 107.3 (1989).

ployed by the Zoning Commission of the District of Columbia in some of its proceedings.

H.R.Conf.Rep. No. 693, 97th Cong., 2d Sess. 42 (1982), *reprinted in* 1982 U.S.C.C.A.N. 651, 704.[6]

Regulations implementing the legislation are consistent with the statutory requirement that the proceedings be rulemaking in nature. The regulations provide that "no person shall have the standing of a party ..." in such proceedings. 11 DCMR § 3340.3 (1991). The hearing procedures do not provide for cross-examination of the applicant's witnesses, although members of the Board may question witnesses. 11 DCMR §§ 3340.10, –3340.13 (1991). In contrast, under the DCAPA, in contested cases, there is party status which carries with it the right of the party to present a case through the presentation of evidence and to conduct cross-examination. D.C.Code § 1–1509(b) (1992). Indeed, one of the purposes of the FMA, as gleaned from the legislative history and as the parties concede, was to avoid subjecting foreign diplomats to this type of confrontational proceeding, which would be incompatible with their diplomatic status.

■ In spite of the plain language of the statute and the clarity of the legislative history of the FMA, the United States and the intervenor (CCNAA) argue that the proper statutory construction and the legislative history support this court's exercise of jurisdiction in this case. Specifically, petitioner and CCNAA contend that in determining whether a case is contested for the purpose of ascertaining our jurisdictional authority under the DCAPA, this court's focus has been upon whether the proceeding involves adjudicative or legislative facts instead of the particular procedures involved. *See Donnelly, supra,* 520 A.2d at 278. However, absent an explicit or implicit statutory requirement of any hearing at all, "the fact that the proceeding may involve primarily adjudicative facts will not make it a contested case." *Id.* at 278–279 (citations omitted). To establish jurisdiction, by statute, an administrative hearing must be statutorily or constitutionally required. D.C.Code § 1–1502(8); *see Donnelly,* 520 A.2d at 276; *see also Communication Workers, supra,* 542 A.2d at 1222. Where such a hearing is provided for, but the type of hearing is in doubt, an analysis of the nature of the issues as adjudicatory or rulemaking may be determinative. *See Donnelly,* 520 A.2d at 278. That is not the case here.

■ In this case, the statute expressly provides for a rulemaking and not an adjudicatory or contested case procedure.[7] Moreover, the legislative history unequivocally explicates this legislative intent. Therefore, the adjudicatory/legislative analysis is not necessary to discern what type of hearing was intended. *See Donnelly, supra,* 520 A.2d at 278. Even assuming that the character of the hearings were adjudicatory in nature, an issue we need not resolve,[8] where

---

6. The Chairman of the Committee on the District of Columbia, Ronald V. Dellums, who also served as a member of the House–Senate Conference Committee on this legislation, in prefatory remarks to the District Committee's hearing, reported on four major issues decided in conference, among which was " '[w]hether or not the decisionmaking process is adjudicatory or rulemaking?' " *Location of Foreign Missions in the District of Columbia: Hearings and Markup on H.R. 3714 and H.R. 3518 Before the House Committee on the District of Columbia,* 97th Cong., 1st Sess. viii (1982). Ultimately, the resolution of the question, according to Congressman Dellums, was as follows:

The substitute will change the Board of Zoning Adjustment proceedings from one that is adjudicatory[,] that is, a contested proceeding where both sides present arguments with the opportunity for cross-examination, to one that is rulemaking, with no requirement for a pub-

lic hearing during which citizens may give testimony.
*Id.*

7. Having considered the plain language of the statute and its legislative history, we reject the petitioners' argument that the question of the nature of the hearing is left open because Congress provided only that FMA proceedings shall be of a rulemaking nature instead of stating that they shall be considered rulemaking under the DCAPA.

8. Petitioner argues that the proceedings are adjudicatory rather than legislative because the FM–BZA was determining rights of a specific property owner and applying the statutory requirements to specific facts. *See Capitol Hill Restoration Soc'y v. Zoning Comm'n,* 287 A.2d 101, 105 (D.C. 1972). The District responds that the involvement of a single piece of property does not neces-

Congress legislates that certain types of agency actions shall not have contested case status, those cases are not the proper subject of our direct appellate jurisdiction. *See Money v. Cullinane*, 392 A.2d 998, 999–1000 (D.C.1978); *see also Wells v. District of Columbia Bd. of Educ.*, 386 A.2d 703, 705 (D.C. 1978).[9]

Finally, CCNAA offers several practical reasons in support of its argument that this court should exercise jurisdiction in this case. These include that the questions presented are questions of law appropriate for decision by an appellate court, that proceedings before the BZA similar to those involved here are subject to review in this court, and that considerations of judicial economy and of Congressional intent to streamline the process suggest that review should be in this court. The simple answer to each of these arguments is that our appellate jurisdiction is limited by statute to contested cases. D.C.Code § 11–722; D.C.Code § 1–1510. No matter how practically desirable another procedure might be, this court's authority is circumscribed by the statutes involved.

For the foregoing reasons we dismiss the petitions for review since we lack jurisdiction to entertain them. Accordingly, we do not reach the mootness question raised by petitioner.

*So Ordered.*

sarily result in contested case status. *See Chevy Chase Citizens Ass'n, supra*, 327 A.2d at 316; *Schneider v. District of Columbia Zoning Comm'n*, 383 A.2d 324, 325, 327–28 (D.C.1978). The District also points out that the statutory considerations for the FM–BZA's determination of the issues are legislative in nature, including: (1) the international obligation of the United States; (2) historic preservation; (3) the adequacy of parking; (4) adequate security and protection, after consultation with proper federal agencies; (5) the municipal interest; and (6) the federal interest. D.C.Code § 5–1206(d).

9. Where a party is not entitled to direct appellate review of an agency's decision, an action for redress may be had in the Superior Court. *Dupont Circle Citizens Ass'n v. Barry*, 455 A.2d 417, 424 n. 28 (D.C.1983); *see also Money, supra*, 392 A.2d at 1000 n. 2.