Robert SCRIMGEOUR et al., Appellants,

v.

Sheldon MAGAZINE et al., Appellees.

No. 13657.

District of Columbia Court of Appeals.

Argued May 3, 1979.

Decided March 31, 1981.

Lester G. Fant, III, Washington, D.C., with whom Andrew D. Pike, Washington, D.C., was on the briefs, for appellants.

David M. Dorsen, Washington, D.C., for appellees.

Before NEBEKER and MACK, Associate Judges, and GALLAGHER,* Associate Judge, Retired.

MACK, Associate Judge:

This appeal centers on a limited agreement entered into by appellants' predecessor in interest as a limited partner and by

---

* Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

appellees as general partners. Following a disagreement regarding appellants' right to share in the proceeds from the sale of the partnership's asset, the appellees filed a complaint for a declaratory judgment. Both parties moved for summary judgment. The trial court granted a summary judgment to appellees. We affirm.

Appellants argue in this court that the trial judge erred in granting summary judgment for appellees in the face of the language of the partnership agreement and in view of appellees' fraudulent conduct in procuring that agreement.

The M & M Partnership was formed for the purpose of leasing a parcel of land and constructing a building thereon for operation as an investment for income producing purposes. The asset of the partnership was the leasehold interest and improvements—an asset which a prospective purchaser sought to acquire in 1977. Appellees are general partners in the M & M Partnership. Appellants, as trustees, are the successors to the interest of the limited partner who, as lessor, leased the parcel of land to M & M. Appellants, however, are also general partners of Scrimgeour Associates who, as successors to the interest of the lessor, ultimately purchased the leasehold interest and improvements owned by M & M at the same terms and conditions offered by the 1977 prospective purchaser.

Appellants demanded ten per cent of the gain realized from the sale. Appellees refused claiming that, pursuant to Paragraph VII(B) of the Partnership Agreement, appellants were not entitled to share. Funds were placed in an escrow account and this action followed.

■ A motion for summary judgment shall be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c). When reviewing the trial court's order granting summary judgment, this court makes an independent review of the record. *Dewey v. Clark*, 86 U.S.App.D.C. 137, 180 F.2d 766 (1950).

■ Where as here a contract contains an integration clause (*i.e.*, providing that the contract sets forth all promises, agreements, conditions and understandings between the parties), the "written language embodying the terms of an agreement will govern the rights and liabilities of the parties . . . unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake." *Slice v. Carozza Properties, Inc.*, 215 Md. 357, 371, 137 A.2d 687, 693 (1958) cited in *Minmar Builders, Inc. v. Beltway Excavators, Inc.*, D.C.App., 246 A.2d 784, 786 (1968).

■ Appellants, urging in this court fraudulent conduct in the procurement of the contract, point solely to the fact that appellees, prior to executing the contract did not contradict appellants' written interpretation of the agreement. The fact is, however, that fraud was not urged in the trial court. Appellants' answer to the complaint for declaratory judgment fails to allege fraud affirmatively. Super.Ct.Civ.R. 8(c).[1] Further, appellants Opposition to Plaintiffs' Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment states that there are no genuine material facts at issue.[2] Thus, for purposes of this appeal, appellants have waived any allegation of fraud. *Whipps v. Kling Bros. & Co.*, 182 Okl. 382, 78 P.2d 291 (Okl.1938).

■ In reviewing the granting of summary judgment to appellees we must first determine whether the terms "profit" and "in effect" as used in Paragraph VII of the agreement are ambiguous. If either term

---

1. Had appellants made a non-frivolous allegation of fraud in their answer, a material issue of fact might have been presented which would have precluded the court from granting a summary judgment to either party. *Drug Fair Community Drug Co. v. Magazine*, D.C.App., 259 A.2d 831 (1969).

2. In the alternative, appellants' motion argued that should the court determine that ambiguity existed as to the proper interpretation of the agreement, the plaintiffs' motion for summary judgment should be denied and a hearing should be conducted to resolve the ambiguity.

is ambiguous, an issue of material fact exists which precludes summary judgment. "Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction." *Friedman v. Thomas J. Fisher & Co.*, D.C.Mun.App., 88 A.2d 321, 323 (1952). We have reviewed the terms as used in the agreement and find no ambiguity.

In appellants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment and In Support of Defendants' Cross Motion for Summary Judgment, it is alleged that Paragraphs VI and VII(A) taken together establish that appellants have a ten per cent interest in the partnership and "unless limited by Paragraph VII. B. . . . are entitled to a ten percent share in all operating profits of the Partnership *as well as the gain realized on the sale of the Partnership Property.*" *Id.* at 3. (Emphasis added.)

Paragraph VI entitled "Capital and Partnership Interest" sets out the percentage of interest of the partners.

Paragraph VII is entitled "Profits and Losses". In relevant part it states:

VII Profits and Losses.

A. The *profits* of the partnership, except as limited by Paragraph B of this Article VII, shall be shared among all of the partners in proportion to the percentages of their interests in the partnership. . . . The net earnings of the partnership, except as hereinafter limited, . . . shall be distributed simultaneously among the partners in the aforesaid proportions, quarter-annually, or at more frequent intervals as may be agreed upon. [Emphasis added.]

B. It is agreed that [appellants' predecessor in interest], as a Limited Partner shall not participate in the *profits* nor distribution of net earnings of the partnership during the period of time that the original permanent financing is in effect. [Emphasis added.]

In their brief, appellants argue that "profit" as used in Paragraph VII(B) refers to net operating profits and not the gain from the sale of the partnership's principal asset.

Appellants' position allows for two contradictory definitions of the word "profit" within one paragraph—*i.e.* in subparagraph (A) the term "profit" includes all operating profits of the partnership and all gains realized from sale of the partnership's assets while in subparagraph (B) "profit" includes only net operating profits.

We reject appellants' interpretation of "profit" as it appears in Paragraph VII(B) and construe as did the trial court the word as used in subparagraphs (A) and (B) to include operating profits as well as gains realized from sale of partnership assets.

Since "profit" as used in the Agreement includes gain from sale of partnership assets, it need only be determined whether the profit was received during the time the original permanent financing was "in effect."

Appellees' complaint alleges and appellants' answer admits that the leasehold interest and improvements were "sold, assigned and conveyed, subject to the original permanent financing". While conceding that from the lender's perspective the original permanent financing remained in effect after August 10, 1977,[3] appellants argue that from the partnership's perspective the financing ceased to be "in effect" once the asset was sold.

Since the leasehold interest and improvements were sold subject to the original permanent financing, the financing remained in effect at the time the profit from the sale of the partnership's asset was received. We conclude that Paragraph VII(B) of the partnership agreement precludes appellants from participating in the distribution of the gain from the sale of the leasehold interest and improvements. The trial court did not

---

**3.** Appellees' Statement of Material Fact As To Which There Is No Genuine Issue includes a February 9, 1978 affidavit by Ramon J. Fernandez, Regional Director of Real Estate Investment for Massachusetts Mutual Life Insurance Company, which states that the original permanent financing remained in effect after August 10, 1977.

err in granting summary judgment to appellees.

*Affirmed.*