DISTRICT OF COLUMBIA, Appellant,

v.

Joseph E. JONES, Appellee.

No. 79–705.

District of Columbia Court of Appeals.

Argued Nov. 12, 1980.

Decided Jan. 19, 1982.

David P. Sutton, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., at the time briefs were filed, were on brief for appellant.

Ken M. Gozur, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, KELLY, Associate Judge, and GALLAGHER, Associate Judge, Retired.*

NEWMAN, Chief Judge:

The District of Columbia appeals a finding that the procedures followed by the Metropolitan Police Department in determining appellee's right to administrative sick leave were constitutionally defective, and also appeals the trial court's determination that because appellee was forbidden by departmental regulation from mitigating damages during the time he spent on leave without pay, appellee was *ipso facto* entitled to full back pay for the period of time in question. In Part I we outline the facts and the nature of appellee's right to administrative sick leave. In Part II we conclude that appellee had a statutorily-derived property interest of constitutional dimension in administrative sick leave, and that the procedures followed failed adequately to safeguard this interest.

In Part III we consider the remedy awarded appellee by the trial court. The case was argued on cross-motions for summary judgment. As we find the record entirely lacking in evidence of a departmental regulation prohibiting appellee from mitigating damages during the time he was on leave without pay, we conclude that there remained, following submission of the parties' cross-motions for summary judgment, a material issue in dispute on the question of damages. We therefore affirm in part and reverse in part the decision of the trial court.

I

The facts underlying the instant appeal are as follows. On April 7, 1975, Officer Joseph E. Jones of the District of Columbia Police Department suffered a contusion of the right knee. Following a determination that this injury had been sustained in the performance of duty, Officer Jones was placed on administrative sick leave pursuant to 5 U.S.C. § 6324(a) (1976).[1] He continued in this status until July 26, 1976, when, upon review of the case, Inspector George R. Suter of the Metropolitan Police Department Police and Fire Clinic Division determined by memorandum decision that Officer Jones was in satisfactory condition to report for regular duty.[2] As a result of

---

\* Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

1. Section 6324(a) provides in pertinent part that "[s]ick leave may not be charged to the account of a member of the Metropolitan Police force ... of the District of Columbia ... for an absence due to injury or illness resulting from the performance of duty."

2. Inspector Suter's decision was as follows:
 A review of Officer Joseph E. Jones Jr. P.D. 42 on file and clinic records indicates that he reported sick on April 7, 1975, and has remained off duty to the present time.
 In a report submitted by Dr. Charles H. Epps Jr.[,] [d]ated July 8, 1976, it stated that his knee is satisfactory for work (REGULAR DUTY).
 As a result of this review, Officer Joseph E. Jones Jr. shall be placed in a chargeable sick leave status from the date of this memorandum. Upon exhaustion of his sick leave, he may be placed in a leave without pay status. In the event Officer Jones does not return to duty prior to exhausting his annual leave, he shall be placed in a leave without pay status.

this decision, Officer Jones was placed on chargeable sick leave status,[3] with the proviso that upon exhaustion of his sick leave he could use his annual leave, and that when this too was spent he would be placed in leave without pay status.[4] After meeting with Officer Jones on August 6, 1976, Inspector Suter on August 9, 1976, in conclusory terms affirmed his earlier decision.[5] Assistant Chief of Police Tilmon O'Bryant met with Officer Jones on October 28, 1976. His summary affirmance on November 3, 1976 of the earlier decisions was the final administrative determination of Officer Jones' right to administrative sick leave.[6] As a result of these determinations, on March 16, 1977 Officer Jones, having exhausted his accumulated sick leave, was placed on leave without pay status. On November 1, 1977, the Police and Firemen's Retirement and Relief Board, having found

Officer Jones to be physically incapacitated for further duty by reason of disability incurred in the performance of his duty as a policeman, placed him on disability retirement pursuant to D.C.Code 1973, § 4–527(1).[7]

Officer Jones sought in this action money damages equivalent to the value of his expended sick leave and the income he lost during the time he spent in leave without pay status. The action was argued on cross-motions for summary judgment. The trial court, following Judge Nebeker's concurrence in *Money v. Cullinane*, D.C.App., 392 A.2d 998, 1000 (1978), concluded that the failure to provide a full, fair, and timely hearing prior to termination of his administrative sick leave had deprived Officer Jones of a cognizable property interest without due process of law, that a new

Officer Jones shall be notified of the contents of this memorandum and shall sign the attached copy, which is to be returned to the undersigned.

3. Sick leave pay accrues to police officers on the basis of one-half day for each biweekly pay period. 5 U.S.C. § 6307(a) (1976). Absences for illnesses or injuries not incurred in the line of duty are charged to the sick leave account of the police officer. Board of Commissioners of the District of Columbia, Order No. 65–528, para. 2(a) (Apr. 15, 1965) [hereinafter cited as Order No. 65–528].

4. Leave without pay status is available to police officers who are absent from work due to illness or injury not incurred in the performance of duty and who have exhausted their sick leave and annual leave. Order No. 65–528, para. 6.

5. Inspector Suter, in his decision of August 9, 1976, stated:

During our meeting on Friday, August 6, 1976, a review of your records was conducted relative to the chargeable sick leave determination made in the Memorandum dated July 26, 1976 involving your present, ongoing sick leave status which originated April 7, 1975.

Upon completion of the review and discussion, I was unable to resolve your case as being the result of performance of duty. At this point, you decided to proceed further with an additional review of your case by Assistant Chief Tilmon B. O'Bryant. This meeting has been set for 1000 hours on Friday, August 20, 1976.

Your sick leave records shall be adjusted to reflect a return of 696 hours which was removed from your balance prior to being granted Administrative Leave-Sick on July 18, 1975.

6. Assistant Chief O'Bryant's decision was as follows:

During our meeting on Wednesday, August 25, 1976 with Mr. Charles H. Schulze in attendance, a review of your records was conducted relative to the denial of Administrative Leave-Sick and being placed in a chargeable sick leave status in Memorandum dated July 26, 1976. This sick leave period began on April 7, 1975, and is presently continuing. Upon completion of the review, you advised me that you have seen a Dr. Nader and that he will send additional reports.

At our meeting on Thursday, October 28, 1976, Dr. Nader's report and the additional evaluation reports have been reviewed. My complete review of your records has not revealed any additional information to warrant a reversal of the previous decision. Therefore, the previous determination of chargeable sick leave is hereby reaffirmed.

This decision is final and has exhausted the administrative process. You will acknowledge receipt of this memorandum with your signature and date on a copy and return it to my office.

7. Section 4–527(1) provides that any police officer who is injured in the performance of duty shall, upon retirement for such disability, receive an annuity computed on the basis of his basic salary at the time of retirement and the number of years he worked as a police officer.

hearing would not rectify the absence of such procedures at a meaningful time, and that Officer Jones was therefore entitled to summary judgment in the amount of the total wages lost while he was on leave without pay.[8]

The petitioners in *Money v. Cullinane, supra,* sought review under the District of Columbia Administrative Procedure Act, D.C.Code 1978 Supp., §§ 1–1501 to –1510 [DCAPA] of a determination that they were not entitled to administrative sick leave. Holding that such a determination was not a "contested case" within the meaning of the DCAPA, *id.* § 1–1502(8), we dismissed for lack of jurisdiction and did not address the merits. In a concurring opinion, Judge Nebeker suggested that we ought, at that time, to have reached the merits of the case in the interest of judicial economy. Addressing those questions, he concluded that the constitutional mandate that administrative decisions comply with the requisites of procedural due process is broader than our jurisdiction directly to review administrative cases, and that the procedures followed by the Police Department were constitutionally deficient. *Money v. Cullinane, supra* at 1000–05.

The issues previously addressed by Judge Nebeker are now squarely before the court for resolution. We turn to this task.

## II

### A. A CONSTITUTIONALLY PROTECTED INTEREST

Due process scrutiny of administrative procedures is available only where the litigant makes a threshold showing that he has at stake a legitimate property or liberty interest which is subject to protection under the Fifth or Fourteenth Amend-

ments of the Constitution. *Mazaleski v. Treusdell,* 183 U.S.App.D.C. 182, 190, 562 F.2d 701, 709 (1977); *Pinkney v. District of Columbia,* 439 F.Supp. 519, 530 (D.D.C. 1977); *see Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understanding that secure certain benefits and that support claims of entitlements to those benefits. [*Id.* at 577, 92 S.Ct. at 2709.]

*See also Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). In the District of Columbia, Congress had established for members of the Police Department a statutory right to administrative leave not chargeable to the sick leave account of the officer where absence is due to injury or illness resulting from the performance of duty. 5 U.S.C. § 6324(a) (1976); *see* note 1 *supra.* Statutory employment rights have previously been held to fall within the liberty and property concept of the Fifth Amendment. *See, e.g., Fitzgerald v. Hampton,* 152 U.S.App.D.C. 1, 8, 467 F.2d 755, 762 (1972) (a veteran's statutory right under the Veteran's Preference Act, 5 U.S.C. § 7701 (1976), to an open and public hearing prior to his discharge from the Air Force fell sufficiently within the liberty and property concepts of the Fifth Amendment to invoke the protection of the due process clause.) The statutory right due District police officers to administrative sick leave in case of injury or illness

---

**8.** The trial court denied Officer Jones' request for the value of sick leave used after the termination of his administrative sick leave. The court again followed Judge Nebeker's concurring opinion in *Money v. Cullinane, supra,* and concluded that Officer Jones had been affected only to the extent of a bookkeeping entry or upon the occurrence of a subsequent and unrelated event. Any deprivation Officer Jones had suffered thereby, the trial court concluded,

could be redressed by an internal Police Department redetermination of his claim. *See id.* at 1004. Officer Jones does not raise as an issue on appeal the propriety of this limitation on his damages award and thus we do not address this issue. We note that, as Officer Jones subsequently retired without ever having returned to active duty, the question of the valuation of such sick leave is moot.

incurred in the performance of duty creates for police officers more than a mere "unilateral expectation," and is, we find, a "legitimate claim of entitlement." *See Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. As such, the officer's interest in obtaining administrative leave is a property right subject to the protections afforded by the due process clause of the Fifth Amendment.

## B. WHAT PROCESS WAS DUE—THE LEGAL BACKGROUND

We are accordingly compelled to consider whether the procedures accorded Officer Jones provide all the process that is constitutionally due before he could be deprived of his protected interest. *See Mathews v. Eldridge,* 424 U.S. 319, 332–33, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976). The Supreme Court has consistently held that some manner of hearing is required before a person may be finally deprived of a property interest, *see, e.g., id.* at 333, 96 S.Ct. at 902; *Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974), or may be "condemned to suffer grievous loss of any kind." *Mathews v. Eldridge, supra* 424 U.S. at 333, 96 S.Ct. at 902 (quoting *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). The opportunity to be heard, once established, "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). As we have determined that a police officer's right to administrative leave is a property right under the Fifth Amendment due process clause, and as the decision of the Police Department—here, Assistant Chief O'Bryant's memorandum decision of November 3, 1976—is the final administrative determination of a police officer's right to administrative leave, Metropolitan Police Department General Order 1001.1 Parts II A 7, 8 (revised June 29, 1973), it follows that Officer Jones was entitled to some kind of hearing prior to the final denial of his right to administrative sick leave.

The question remains what process was due. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). *See also Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961) (quoting *Joint Anti-Fascist Refugee Committee v. McGrath, supra* 341 U.S. at 162, 71 S.Ct. at 643). (" 'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances.") In any given situation, a balance must be struck to accommodate the competing interests of government and the individual. In *Mathews v. Eldridge, supra* 424 U.S. at 334–35, 96 S.Ct. at 902–03, the Supreme Court outlined a tripartite analysis for the determination of what process is due:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

## C. APPLICATION OF THE *Mathews v. Eldridge* BALANCING TEST

### 1. *The Private Interest*

At stake in the instant case was the plaintiff/appellee's private interest in the continued receipt of the pay due him on administrative sick leave: a statutory entitlement which was also, it was alleged, appellee's sole potential source of income during the period in question.[9] The govern-

---

**9.** Appellee argues that regulations of the Police Department forbade any member of the De-

partment from obtaining other employment while on leave without pay. *See infra* at 524.

ment asserts that the instant case is analogous to *Mathews v. Eldridge, supra,* in that, as in the case of disability benefits, eligibility for administrative sick leave is not based upon financial need, *see id.* at 340, 96 S.Ct. at 905, and argues that "[t]he availability of unused annual leave, the right to be advanced additional sick leave, and the greater likelihood of accrued earnings and other assets, logically suggest themselves as examples of such resources" as are generally available to the family units of police officers whose injuries necessitate temporary absences from duty. Although, as in *Mathews,* financial need is not a criterion for determination of the right to administrative sick leave, the cases differ in that, whereas *Mathews* involved merely a temporary deprivation, the instant case concerns a final deprivation of appellee's right to the entitlement. The potential deprivation in this case, because it is permanent, is thus of a different and, in a sense, a weightier nature than that in *Mathews. Cf. Ingraham v. Wright,* 430 U.S. 651, 676–80, 97 S.Ct. 1401, 1415–17, 51 L.Ed.2d 711 (1977). (In determining whether a child who was corporally punished in public school had been accorded due process prior to being finally deprived of a cognizable liberty interest, the Supreme Court considered as a significant factor in the due process equation the availability of post-deprivation civil remedies and criminal sanctions, where it subsequently found that a child had been wrongfully or excessively punished. No such post-deprivation remedies were available in the instant case.) [10]

### 2. *The Risk of an Erroneous Deprivation* [11]

■ In assessing the risk of an erroneous deprivation, the most significant characteristic of the Police Department procedures for determining an officer's entitlement to administrative sick leave is, from our appellate vantage, the extreme paucity of the record. No record—neither transcript, nor electronic recording, nor even written notes—was kept of the meetings between appellee and Inspector Suter and Assistant Chief O'Bryant. We are unable to determine from the sparse documentary record before us whether or to what extent appellee was permitted to present evidence or to cross-examine agency witnesses or otherwise meet the evidence presented against him. We are likewise unable to assess the veracity of appellee's assertion that his proffer of certain medical evidence was refused, or to determine whether such refusal, if it occurred, was justifiable.

With respect to the risk of an erroneous deprivation, we note also the absence of written guidelines outlining an officer's right to administrative sick leave. Although the government refers to an agency practice of affording police officers threatened with the termination of administrative sick leave the right to appear with counsel and to present additional evidence, the record is silent as to the extent of this customary "right" and as to when, if ever, appellee was notified of it.

"The administrative process will best be vindicated by clarity in its exercise." *Securities and Exchange Commission v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943) (quoting *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 197, 61 S.Ct. 845, 853, 85 L.Ed. 1271 (1941)). The process here was obscured first, by the lack of specificity in the "General Orders" governing Police Department administrative sick leave determinations, as a result of which the agency proceeded with virtually unfettered discretion; second, the lack of a record seemingly renders the administrative decision unassailable upon appeal.

Discussing the purpose of judicial review of administrative decisions, we have said:

**10.** We find no merit in the government's contention that a police officer's private interest in administrative sick leave is diminished by the officer's personal financial reserves. There is no suggestion in the statute creating for police officers a right to administrative sick leave that

Congress intended to distinguish between more and less affluent officers.

**11.** For a recent application of this branch of the *Mathews v. Eldridge* balancing test, *see Little v. Streater,* —— U.S. ——, ——, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627 (1981).

Our function in review obviously is not to weigh the testimony and substitute ourselves for the trier of fact who heard the conflicting testimony.... Rather: "*[T]he function of the court in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues.*" ... [*Communications Workers of America v. District of Columbia Commission on Human Rights*, D.C.App., 367 A.2d 149, 152 (1976) (quoting *Dietrich v. District of Columbia Board of Zoning Adjustment*, D.C.App., 293 A.2d 470, 473 (1972)) (emphasis added).]

*See also Johnson v. United States*, D.C. App., 398 A.2d 354, 364 (1979). Also to limit the exercise of uncontrolled administrative discretion, reviewing courts have required that agencies "articulate the standards and principles that govern their discretionary decision in as much detail as possible." *Environmental Defense Fund, Inc. v. Ruckelshaus*, 142 U.S.App.D.C. 74, 88, 439 F.2d 584, 598 (1971) (footnote omitted). For a critique of unfettered agency discretion, *see also* 2 K. Davis, Administrative Law Treatise § 8.1–.4, at 157–74 (2d ed. 1979).

 In the instant case, the sparcity of the administrative record frustrated judicial review of the administrative process, as the record failed to reveal the extent of the consideration the Police Department gave to material issues in the case. Insofar as the regulations governing administrative sick leave determinations contained no articulation of the standards and principles upon which its decisions would be based, there was an inherent unnecessary risk of erroneous deprivation.

Appellant relies on *Basciano v. Herkimer*, 605 F.2d 605 (2d Cir. 1978), for the proposition that where an administrative determination is based on medical reports, the contribution of a trial-type hearing to the factfinding process is limited at best, and the potential benefits of such a hearing are outweighed by the public interest in a simpler and less expensive decision-making process. *Basciano* concerned the right of a municipal employee to disability retirement. This determination was entrusted to a medical board composed of three physicians. *Id.* at 608. The applicant for disability retirement in *Basciano* was permitted as of right to submit documentary medical evidence both before and after the Board's initial decision. *Id.* at 608–09.

However, pragmatic means of insuring against the unnecessary risk of an erroneous deprivation of a property interest, present in the *Basciano* regulatory scheme, were absent in the instant case in two respects. First, while we cannot discern from the record whether appellee was in fact given the opportunity to present written medical evidence, it is clear that the operative regulations did not guarantee him such a right. Second, in contrast to *Basciano*, appellee's medical condition was assessed here by lay administrators—Inspector Suter and Assistant Chief O'Bryant—rather than by medical experts. The use of lay decision-makers to evaluate medical evidence creates an added risk of erroneous deprivation that should be counterbalanced by additional procedural safeguards.

### 3. *The Government's Interest*

 The third factor in the procedural due process equation, as set forth in *Mathews v. Eldridge, supra*, 424 U.S. at 335, 96 S.Ct. at 903, is: "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." In this regard, we note that the Superior Court has jurisdiction to review the final administrative determinations of the Police Department Administrative Board, and has repeatedly remanded cases to the Police Department upon findings that the plaintiff/officer had not been accorded even the minimal elements of due process, *see, e.g., Hamlet v. District of Columbia*, D.C.Super.Ct.Civ. No. 2405–78, slip op. at 2 (August 30, 1979), or that the lack of substantial evidence of record in support of the agency determination rendered the agency decision arbitrary and capricious. *Kegley v. District of Co-*

**520**

*lumbia*, D.C.Super.Ct.Civ. No. 11645–78, slip op. at 4–5 (February 5, 1980). By introducing more formalities into the administrative determination of a police officer's right to administrative sick leave, appellee suggests that we might expedite the judicial review procedure, reduce the necessity for repeated remands to the Police Department, and thus actually lighten the administrative burdens on the Police Department. We agree with appellee that under the tripartite balancing test of *Mathews v. Eldridge, supra*, additional procedural safeguards would lessen the risk of an erroneous deprivation of the property interest in administrative sick leave, without necessarily increasing overall the Police Department's administrative burdens.

In *Mathews v. Eldridge*, though, the Court, in assessing the Government's interest in the administrative process, calculated into the equation not only the burdens that additional procedural requirements would entail, but also the governmental function involved. *Id.* at 335, 96 S.Ct. at 903. The decision whether or not to permit an officer to remain on administrative sick leave is a "personnel management" decision. *Money v. Cullinane, supra* at 1000. *Wells v. District of Columbia Board of Education*, D.C. App., 386 A.2d 703 (1978), thus mandates the conclusion that the Police Department was not required to apply the full panoply of procedural safeguards that are found in court trials. Although *Wells* held only that "the exclusion of employee 'selection or tenure' matters from the [Administrative Procedure Act's] definition of a 'contested case' encompasses personnel decisions transferring employees within the agency," *id.* at 706, we stated at that time our concern that administrative agencies should not be over-whelmed by the procedural requirements mandated in "contest cases":

> Moreover, our interpretation of [D.C. Code 1973] § 1–1502(8)(B) is consistent with the Congressional purpose to exclude "administrative determinations traditionally nonsusceptible to application of the process of adjudication" from the definition of a "contested case." If every decision to transfer a government employee from one position to another were subject to the "contested case" procedural requirements, and direct review by the court, government agencies would be unable to make the daily employment decisions which are an inherent part of efficient administration. The philosophy underlying the employee "selection or tenure" exclusion was summarized by Professor Davis when he asked:
>
> > Do we want courts inquiring into personnel management—*salary increases, sick leave, office hours, allocation of parking spaces in the basement of the agency's building?* [*Id.* (quoting 4 K. Davis, Administrative Law Treatise 28.16, at 82 (1958).] [12]

*See also Arnett v. Kennedy*, 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part) (to maintain employee efficiency and discipline, "the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs.") [13]

### D. THE PROCESS THAT APPELLEE RECEIVED

We turn now to a description of the process appellee received. The procedures generally accorded police officers in appellee's position were adequately outlined in *Money v. Cullinane, supra* at 1001 (Nebeker, J., concurring):

---

**12.** Despite the above language, *Wells* explicitly does not preclude judicial review of agency procedures: "This holding does not mean that all [agency personnel] decisions are unreviewable. It does mean, however, that individuals considering themselves aggrieved, in a judicially cognizable sense, always have access to the trial court for review in an original proceeding . . . ." *Wells v. District of Columbia Bd. of Educ., supra* at 706 (quoting *Dupont Circle Citizens Ass'n v. District of Columbia Zoning Comm'n*, D.C.App., 343 A.2d 296, 308 (1975) (en banc).

**13.** Commentators too have expressed concern with the overjudicialization of the administrative process. *See, e.g.,* Friendly, *Some Kind of Hearing*, 123 U.Pa.L.Rev. 1267 (1975); Frug, *Does the Constitution Prevent Discharge of Civil Service Employees?* 124 U.Pa.L.Rev. 942 (1976).

The Chief of Police has established the following procedures by general order. The initial determination of whether an injury or illness was incurred in the line of duty is made in writing by an inspector assigned to the Police and Fire Clinic after review of an investigative report of a police official, medical reports and records, and additional data from the member's personnel records. Should the determination be unfavorable to the member, he may seek review of the decision by the inspector, during which the member may inspect the entire file of data and may submit additional information relevant to the issue. The subsequent written decision by the inspector is final. General Order No. 1001.1, para. II.A. 6, 7 at 18 (Rev. 7/31/72). In addition to these procedures, it appears that, by custom, the member may, in seeking review of the initial determination, have the assistance of counsel at an informal meeting with the inspector. He may not, however, confront witnesses adverse to his cause, nor is a record made of this meeting.

## E. THE PROCESS THAT WAS DUE

 In the determination of what process was due Officer Jones,[14] we must balance competing interests: to assure the protection of the police officer's substantial property interest, but not unduly to burden the Police Department with technical procedural requirements. The Police Department was required to accord Officer Jones a procedural process that was essentially fair,[15] and also to preserve a sufficient record whereby a reviewing court might ascertain the fairness of the procedure.[16]

 We consider an "essentially fair" hearing to be one characterized by the fundamental elements of procedural due process. First in the enumeration of such elements, we count an officer's right to receive prior notice of the proposed termination of his administrative sick leave, of the basis for the termination, and of the extent of his rights to contest the action. "Otherwise the individual likely would be unable to marshal evidence and prepare his case so as to benefit from any hearing that was provided." Friendly, *supra* note 13, at 1280–81 (footnote omitted); *cf. In re Gault*, 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 (1967) ("Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded . . . .") We are unable to determine from the record what notice, if any, Officer Jones received of his rights before the Police Department Police and Fire Clinic Division.

14. *See* Note, *Specifying the Procedures Required by Due Process: Toward Limits on the Use of Interest Balancing*, 88 Harv.L.Rev. 1510, 1518 & n.42 (1975), criticizing the failure of courts to specify the particular procedures required by due process.

15. *See* 2 K. Davis, Administrative Law Treatise *supra*, § 13.1:

The cardinal proposition of [*Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)] is that on a question of adjudicative fact on which a trial is not appropriate due process may require a notice and opportunity for informal response. The important idea of [*Mathews v. Eldridge, supra*] is that a main reason for denying a trial-type hearing may be that the informal procedure the agency has provided is adequate. Those two simple propositions . . . may become the foundation for a tremendous super-structure of law that will be concerned with what we are calling "fair informal procedure"—a term that has not generally been a part of judges' vocabulary, but should be.

16. Professor Frug, discussing the analogous problem of the discharge for incompetence of civil service employees, suggested that

[g]iven the central role of the evaluation process in the determination of the fairness of the judgment of incompetence, the appropriate role of the court—and the concept of due process—in reviewing employee discharges for inadequate job performance is a review of the fairness in that process. Such a review of the process is all that is necessary, or even useful, to establish fairness in such cases. The close relationship between modern theories of personnel management, which suggest that requiring a trial-type inquiry into facts underlying a supervisor's decision to discharge impairs, rather than promotes, both fairness and effectiveness in personnel management. [Frug, *supra* note 13, at 1004.]

Likewise, whereas an officer must be given the opportunity to know the evidence against him, and to present reasons why his administrative sick leave status should not be discontinued, see *Goldberg v. Kelly*, 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970); Friendly, *supra* note 13, at 1281, 1283, the record is silent as to the extent to which Officer Jones' rights to know the evidence against him and respond to it were protected.

■ Although the question is unresolved as to whether an oral hearing is one of the "fundamental elements" of procedural due process, *Gray Panthers v. Schweiker*, —— U.S.App.D.C. ——, ——, 652 F.2d 146, 163–165 (1981); Friendly, *supra* note 13, at 1281 & n.79, we conclude that under the *Mathews v. Eldridge* balancing test a police officer is entitled to an informal oral hearing [17] before his right to administrative sick leave is finally terminated. "[W]ritten submissions do not afford the flexibility of oral presentations; they do not permit the recipient to mold his argument to the issues the decision maker appears to regard as important." *Goldberg v. Kelly, supra*, 397 U.S. at 269, 90 S.Ct. at 1021. Oral hearings

> provide [ ] a way to ensure accuracy when facts are in dispute ... [and] are an effective way to eliminate misunderstandings and focus issues ....
>
> The [oral] hearing requirement and many of the additional safeguards that due process may require in particular circumstances also serve as an institutional check on arbitrary or impermissible action ....
>
> \* \* \* \* \* \*

A third and perhaps most important reason for generally insisting upon an oral hearing requirement is that no other procedure so effectively fosters a belief that one has been dealt with fairly, even if there remains a disagreement with the result .... [*Gray Panthers v. Schweiker, supra* at 162.]

To date, "the Supreme Court has ... not expressly upheld any process finally disposing [in an adjudicatory determination] [18] of a liberty or property claim that provided no opportunity for an oral personal exchange at any point in the process." *Id.* at 27–29 (footnotes omitted). The policy reason which might, under the *Mathews v. Eldridge* balancing test, weigh against an oral hearing requirement—*i.e.*, judicial reluctance to require unnecessary, unwieldy, and expensive additional procedural requirements of an administrative agency performing routine managerial tasks—is inapplicable to cases such as the one presently under consideration, as the Police Department has functioned effectively until now while according police officers an informal oral hearing prior to the final termination of their rights to administrative sick leave.

■ It is uncontroverted that Officer Jones met informally with representatives of the Police Department Police and Fire Clinic Division, and these meetings, we conclude, did satisfy Officer Jones' right to an oral hearing, although, under the notice requirement of procedural due process, he should have been apprised prior to the meetings of the manner in which they would be conducted.

---

17. *See Gray Panthers v. Schweiker, supra* at 148 n.3, for a brief discussion of the distinction between formal and informal oral hearings, and between oral hearings and "paper hearings."

18. In *Gray Panthers, supra*, the court distinguished the Supreme Court's opinion in *United States v. Florida E. Coast Ry. Co.*, 410 U.S. 224, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973), by noting that that opinion "*expressly relied* upon the distinction between rulemaking and adjudication." *Id.* at 161 n.29 (emphasis in original). [Our cases have] established that there was no across-the-board constitutional right to oral argument in every administrative proceeding regardless of its nature. While the line dividing them may not always be a bright one, these decisions represent a recognized distinction in administrative law between proceedings for the purpose of promulgating policy-type rules or standards on the one hand, and proceedings designed to adjudicate disputed facts in particular cases on the other. [*Id.* at 161 n.29 (quoting *United States v. Florida E. Coast Ry. Co., supra*, 410 U.S. at 245, 93 S.Ct. at 821).]

The right to representation by counsel is not so "fundamental" as certain other elements of procedural due process. *See Friendly, supra* note 13, at 1287–88; *Goss v. Lopez,* 419 U.S. 565, 583, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975); *Wolff v. McDonnell, supra,* 418 U.S. at 569–70, 94 S.Ct. 2981–82. The Supreme Court has commented, though, that

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Powell v. Alabama,* 287 U.S. 45, 68–69 [53 S.Ct. 55, 64, 77 L.Ed. 158] (1932). We ... say ... only that the recipient [of public welfare benefits] must be allowed to retain an attorney if he so desires. Counsel can help delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination, and generally safeguard the interests of the recipient. We do not anticipate that this assistance will unduly prolong or otherwise encumber the hearing. [*Goldberg v. Kelly, supra,* 397 U.S. at 270–71, 90 S.Ct. 1021–22.]

In light of our observation that, as in the case of oral hearings, the Police Department has operated effectively until now while allowing police officers to retain and be represented by counsel in administrative sick leave hearings, *see supra* at 518, we see no policy interest, under the *Mathews v. Eldridge* balancing test, which would be served by limiting the right of officers to retain and be represented by counsel in such hearings in the future.

Although it is uncontested that Officer Jones was permitted to be represented by counsel, it is not ascertainable from the record at which time he was apprised of this right. We conclude that he should have been given adequate prior notice of this right so that he could have utilized the assistance of counsel in preparing for the administrative sick leave hearing.

The record is silent too as to whether Officer Jones was allowed by the Police Department Police and Fire Clinic Division to call witnesses and to cross-examine government witnesses.[19] Determination as to whether police officers need be accorded such rights, which have been considered less "fundamental" than others which are discussed above, are, we hold, best left to the sound discretion of the officials authorized to issue regulations on the subject.[20] *Cf. Wolff v. McDonnell, supra,* 418 U.S. at 569, 94 S.Ct. at 2981 ("The better course at this time, ... is to leave these matters [whether prisoners should enjoy the rights of confrontation and cross-examination in disciplinary proceedings] to the sound discretion of the officials of state prisons.") Thus, despite the paucity of the record, we do not perceive in the procedure accorded Officer Jones any violation in this regard.

Another serious defect in the procedures accorded Officer Jones is the lack of a record of the Police Department proceeding in this case. "Given the central role of the evaluation process in the determination of the fairness of the judgment ..., the appropriate role of the courts ... is [to] review of the fairness in that process." Frug, *supra* note 13, at 1004. Such review is clearly impossible without a record of the procedures followed; the reviewing court also requires a statement of reasons for the judgment. *See* Friendly, *supra* note 13, at 1291–92.

---

**19.** The Police Department appears until now to have relied primarily upon evidence not necessarily legal in nature—written medical reports—in determining the eligibility of police officers for administrative sick leave. Insofar as this is a determination of physical disability (the other prong of the entitlement test concerns the *ontogeny*, rather than the *nature* of the alleged disability, *see* n.1, and thus is not a determination of physical capacity), such documentation constitutes a substantial and acceptable form of evidence. *See Richardson v. Pe-* *rales,* 402 U.S. 389, 402–06, 91 S.Ct. 1420, 1427–29, 28 L.Ed.2d 842 (1979); *Mathews v. Eldridge, supra,* 424 U.S. at 344–45, 96 S.Ct. at 907–08.

**20.** The Council of the District of Columbia was so authorized under 5 U.S.C. § 6324(b)(1) (1976), which was in effect at the time of the events giving rise to this appeal. Under present law, the Mayor holds this authority. D.C.Code 1981, § 1–613.3(*o*). *See id.,* § 1–633.2(a)(6).

As a number of the procedural formalities essential for a fair determination of an officer's right to administrative sick leave were absent in the instant case, we conclude that appellee was denied procedural due process in his Police Department hearing, and to this extent affirm the decision of the trial court.

## III. REMEDY

 The measure of damages in an employee's action against his employer for breach of the employment contract is generally the compensation "that would have been due to the employee during the unexpired period of employment with appropriate reduction to present worth." D. Dobbs, Law of Remedies § 12.25, at 924 (1973) (footnotes omitted); *accord, Keefer v. Keefer and Johnson, Inc.*, D.C.App., 361 A.2d 176 n.8 (1976); *see also Harris v. Asco*, D.C.Mun.App., 144 A.2d 544, 545 (1958) ("The guiding principle in awarding damages is restoration of the injured party to the position he would have enjoyed if the one guilty of the breach had complied with his contract.") This *prima facie* entitlement, though, is subject to the defense of mitigation of damages: "If the employee has obtained a substitute job, or could obtain one by reasonable effort, he is chargeable with the income he obtains or reasonably could obtain in this fashion, but only if the employer sustains the burden of proving these facts." *Id.* at 925 (footnote omitted); *accord, e.g., McAleer v. McNally Pittsburg Manufacturing Co.*, 329 F.2d 273, 275 (3d Cir. 1964); 11 S. Williston, Law of Contracts § 1359 (3d ed. 1968).

 The trial court in this case, following the concurrence in *Money v. Cullinane,* *supra*, concluded that a new hearing before the Police Department Administrative Board would not serve to rectify the absence of procedural due process at a meaningful time, and ordered summary judgment for appellee for the value of leave without pay incurred from March 16, 1977 through November 1, 1977.[21] The trial court's theory of damages rested upon a factual finding that while a police officer is in leave without pay status, he remains subject to departmental regulations including a prohibition against engaging in other employment, and thus is unable to mitigate damages. *See Money v. Cullinane, supra* at 1001.

The instant case was argued on cross-motions for summary judgment.

A motion for summary judgment shall be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c). When reviewing the trial court's order granting summary judgment, this court makes an independent review of the record. *Dewey v. Clark*, 86 U.S.App.D.C. 137, 180 F.2d 766 (1950). [*Scrimgeour v. Sheldon Magazine*, D.C.App., 429 A.2d 187, 188 (1981).] Although there is substantial evidence in support of the trial court's finding that the procedures accorded appellee denied him due process, we find neither affirmative allegations by the plaintiff/appellee in his complaint nor any evidence of record that Police Department procedures forbade him from engaging in other employment during the time he was on leave without pay.[22]

Appellant, in its Answer to the Complaint, denied appellee's allegation of damages. There thus remain genuine issues of material fact as to the extent of damages

**21.** Pursuant to this order the parties herein subsequently stipulated that the value of appellee's leave without pay was the value of his gross back pay for the period in question, $10,629.66, which would be reduced in accordance with the Back Pay Act, 5 U.S.C. § 5596 (1976).

Appellee also sought in his complaint the "value of expended sick leave"—*i.e.*, the value of the chargeable sick leave appellee used after he was removed from administrative sick leave status. *See* note 8 *supra*.

**22.** We note that General Order 1001.1, para. I.E. (2) (December 1, 1971), relied upon by appellee as authority for the proposition that an officer of the Metropolitan Police Department is not permitted to engage in other employment even when on leave without pay status, refers only to departmental regulation prohibiting officers on sick leave from accepting non-Police Department employment, and makes no reference to officers in leave without pay status.

suffered by appellee and proximately caused by the denial of due process and whether these damages should have been mitigated. We conclude that appellee was not entitled to summary judgment as a matter of law on the issue of damages.[23] The decision of the trial court with respect to damages is accordingly reversed and remanded for proceedings consistent with this opinion.

*So ordered.*

GALLAGHER, Associate Judge, Retired, dissenting:

The majority affirms the trial court (except as to damages) because "a number of the procedural formalities essential for a fair determination of an officer's right to administrative sick leave were absent in the instant case . . . ." This, says the majority, requires the conclusion "that appellee was denied procedural due process in his Police Department hearing . . . ." (*ante* at 524.)

As nearly as I can understand it, the majority reaches its conclusion because it says some fundamental elements of procedural due process of law were lacking at the administrative agency level. But, on the other hand, the majority concludes there is a lack of a record of the administrative proceedings in this case. As I read the opinion, the court says the record does not reveal whether Officer Jones received procedural due process[1] and therefore it holds that he was deprived of it. I find that passing strange.

Not only is the majority opinion inherently inconsistent, but one is unable to under-

stand what it really stands for—except that it holds there was a denial of due process of law and affirms the judgment (except for damages).

Essentially, it misapplies the exposition in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), on the fundamentals of due process in administrative hearings. There, the issue was whether due process requires that prior to the termination of Social Security disability benefits, the recipient must be afforded an opportunity for an evidentiary hearing. After an exploration of due process requirements in administrative hearings, the Court held that an evidentiary hearing was not required. The majority would have done well to benefit from the guidance of *Eldridge*.

I believe the court's opinion, if allowed to stand, will cause untold confusion in the personnel administration of the local government. At the least, the majority should take us into its confidence on what it is actually deciding in the matter of procedural due process of law. In an important sense, the court leaves the field of administrative law in disarray in this jurisdiction.

---

23. Super.Ct.Civ.R. 56(c) provides in pertinent part that, "[a] summary judgment . . . may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." It is accordingly not inappropriate for us to affirm the finding of the trial court concerning denial of procedural due process but to reverse summary judgment on the issue of liability.

1. *E.g.,*
 (a) "We are unable to determine from the record what notice, if any, Officer Jones received of his rights before the Police Department Police and Fire Clinic Division."

 (b) "The record is silent as to the extent to which Officer Jones' rights to know the evidence against him and respond to it were protected."
 (c) "Although it is uncontested that Officer Jones was permitted to be represented by counsel, *it is not ascertainable from the record at what time he was apprised of this right.*" (Emphasis added.)
 (d) "The record is silent too as to whether Officer Jones was allowed by the Police Department Police and Fire Clinic Division to call witnesses and to cross-examine government witnesses."