**DISTRICT OF COLUMBIA, et al., Appellants,**

v.

**Joseph J. WOODY, Appellee.**

No. 81–19.

District of Columbia Court of Appeals.

Argued June 22, 1982.

Decided Oct. 13, 1982.

Leo N. Gorman, Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on briefs, for appellants.

Charles H. Schulze, with whom Leonard C. Pederson, Jr., Washington, D.C., was on brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and MACK, Associate Judges.

MACK, Associate Judge:

Appellants challenge the trial court's grant of a summary judgment in appellee's, a Metropolitan police officer's, favor. In 1979, appellee filed suit in Superior Court claiming that the administrative determination of the Metropolitan Police Department (Department) regarding the type of leave to which he was entitled under 5 U.S.C. § 6324 (1976) did not comport with due process. He, therefore, sued to recover the back pay to which he claimed he was entitled plus damages for due process deprivation.

On October 24, 1964, appellee sustained an on-duty back injury. In April 1975, appellee, who began to again suffer from intense pain, reported to the Police and Fire Clinic where he was examined by a physician and ordered onto sick leave. Six months later, following an administrative finding by Inspector Suter of the Police and Fire Clinic Division that his absences were not caused by his on-duty injury, appellee, contrary to his request that he be placed on administrative leave (sick),[1] was placed on

---

1. 5 U.S.C. § 6324(a) provides:

   (a) Sick leave may not be charged to the account of a member of the Metropolitan Police force ... for an absence due to injury or illness resulting from the performance of duty.

chargeable sick leave status.[2] On January 23, 1976, appellee, his sick leave status exhausted, was placed on leave without pay status.[3] In March 1976, appellee returned to work.[4] Two weeks later, Inspector Suter rendered his final administrative decision which reaffirmed his earlier ruling.

Appellee thereafter appealed Inspector Suter's decision to Assistant Police Chief O'Bryant. A hearing was held on August 25, 1976. At the end of the hearing, which lasted approximately five minutes, Chief O'Bryant took the matter under advisement. Four days later, he affirmed Inspector Suter's ruling.[5]

Thereafter, appellee brought suit in Superior Court and moved for summary judgment alleging that the administrative decisions placing him on chargeable sick leave and leave without pay status without a hearing at a meaningful time in a meaningful manner, *see Money v. Cullinane,* D.C. App., 392 A.2d 998, 1000–05 (1978) (Nebeker, J., concurring), deprived him of a substantial property interest without due process. As such, he sued appellants for $100,-000.

Appellants opposed the summary judgment motion contending that there existed genuine issues of material fact as to, *inter alia,* whether the hearings appellee received comported with due process and, if they did not, whether appellee was automatically entitled to damages or relief in the form of a court-ordered administrative hearing. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The trial court granted appellee's motion on the "issue of liability" and ordered the parties to stipu-

late as to the value of the lost wages. If the parties so stipulated, the court noted, summary judgment would be granted to appellee in that amount. No stipulation was entered into and in November 1980 the Superior Court remanded the case to the Department with directions that it make an "administrative determination of the amount of pay and leave benefits, if any, due ... to plaintiff as a consequence of defendants' refusal to grant plaintiff administrative leave" and to, thereafter, pay that amount to appellee "without prejudice to appropriate judicial review." This appeal followed.

■ There are two primary issues which we must address on appeal. The first is whether the trial court was correct in granting relief on a finding that the administrative hearings afforded appellee did not comport with due process requirements. We hold that it was. In our recent decision in *District of Columbia v. Jones,* D.C.App., 442 A.2d 512 (1982), this court set forth at length and with specificity those procedures which the Department must employ in determining whether its officers are eligible for administrative leave (sick). It concluded that "a number of the procedural formalities essential for a fair determination of an officer's right to administrative leave (sick) were absent" and, thus, affirmed the trial court's grant of summary judgment on the narrow issue of whether Jones was accorded due process by the Department. *Id.* at 524.

At oral argument, appellant conceded that the procedures accorded appellee here

2. Sick leave pay accrues to police officers on the basis of one-half day for each biweekly pay period. 5 U.S.C. § 6307(a) (1976). Absences for illnesses or injuries not incurred in the line of duty are charged to the sick leave account of the police officer. Board of Commissioners of District of Columbia, Order No. 65–528, para. 2(a) (April 15, 1965).

3. Leave without pay status is available to police officers who are absent from work due to illness or injury not incurred in the performance of duty and who have exhausted their sick leave and annual leave. Order No. 65–528, para. 6.

4. In a related action, Woody appealed from a 1981 finding of the Police and Firemen's Retirement and Relief Board that he was not permanently disabled from useful and efficient service as a police officer due to hearing loss, ringing in his ears and dizziness. This court affirmed the Board in a per curiam order. *Woody v. Police & Firemen's Retirement & Relief Bd.,* D.C.App., 441 A.2d 987 (1982).

5. Chief O'Bryant's decision was not included in the record on appeal.

did not differ in any significant respect from those found constitutionally wanting in *Jones.* That concession, plus our review of the scant administrative record on appeal, convinces us that the trial court was correct insofar as it granted summary judgment on the issue of whether procedural due process was afforded appellee at the administrative level.

The second major issue raised by this appeal presents the thornier question of whether the trial court erred in granting a summary judgment on the broad issue of "liability." This judgment, in effect, subsumed not only the issue of whether due process was accorded appellee but also the issues of whether the administrative determinations on the merits of appellee's claim were correct and, if so, whether an award of damages was appropriate. We think the trial court's fashioning of such a broad remedy was without the bounds of both Supreme Court and District of Columbia precedent and, as such, we reverse.

In *Carey v. Piphus, supra,* the Supreme Court held that in the absence of proof of actual injury resulting from their suspensions from school without procedural due process, the respondents were entitled to recover only nominal damages. In so ruling, the Court rejected the respondent's contention that damages should be presumed to flow from every deprivation of due process. Instead, the Court, analogizing to the common law of torts, concluded that the respondents should "at least . . . be put to their proof on the issue," *id.,* 435 U.S.

at 262, 98 S.Ct. at 1051, and remanded the case to the district court for a determination of whether the suspensions were justified. In so doing, the Court reasoned:

Common-law courts traditionally have vindicated deprivations of certain "absolute" rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights. [*Id.* at 266, 98 S.Ct. at 1053 (footnote omitted).]

■ Thus, the Court recognized that while nominal damages might be presumed to flow from a due process deprivation, there is no entitlement to consequential damages unless a party can prove, on remand, that the established due process deprivation proximately caused an erroneous decision on the merits. Here, the trial court, by resolving the merits of appellee's claim and ordering the award of damages flowing therefrom based solely on a finding of constitutional infirmity, violated the dictates of *Carey.* We, therefore, reverse the judgment of the trial court and remand to the trial court with orders that it further remand the case to the Department[6] for a

---

**6.** In addition, we do not agree that appellee is entitled to recover back pay under the Back Pay Act, 5 U.S.C. § 5596 (Supp. IV 1980), at *this time. Section 5596(b)(1) reads:*

(b)(1) An employee of an agency [including the District of Columbia government] who, on the basis of a timely appeal or an administrative determination . . . is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, *to have been affected by an unjustified* or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

(i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period; . . . .

"In general, where adverse actions are taken by agencies without providing adverse action procedures, the action constitutes an 'unjustified or unwarranted personnel action' within the meaning of the Back Pay Act, and entitles the employee to back pay." *Summers v. Unit-*

hearing consistent with the procedures we set out in *District of Columbia v. Jones, supra.*[7]

*Reversed and remanded.*

KERN, Associate Judge, concurring in part and dissenting in part:

As I read the record in this relatively uncomplicated case, appellee Woody, a District of Columbia police officer, injured his back while on duty in 1964. In 1975, he sought to be placed on administrative leave because of pain he asserted he was suffering as a result of that on-duty injury 11 years earlier. Officer Woody underwent an examination at the Police and Fire Clinic and was denied administrative leave; therefore, he took sick leave. He claimed that since his incapacity to perform duties in 1975 was the direct result of his 1964 injury he should not be required to use sick leave for his absence.[1] His claim that the 1964 injury precipitated his 1975 incapacity was rejected at both the initial and review levels of the administrative process employed by the Police Department in handling sick leave disputes.[2]

Appellee Woody filed a complaint in the trial court for Wages Due and Owing against the Chief of Police. Appellee alleged that "the administrative decisions that placed him on chargeable sick leave and placing him in a leave-without-pay status were made without a hearing at a meaningful time and in a meaningful manner. As a direct and proximate result . . . the plaintiff [appellee] was deprived of a substantial property interest in derogation of his contract of employment without due process." (Record at 2.)

Appellants answered the complaint and appellee then filed a motion for summary judgment. Appellants opposed the motion, asserting that there was a genuine issue of material fact: whether the hearings afforded appellee Woody in the determination by the Police Department that he was *not* entitled to administrative leave during his year-long absence from duty were lacking in due process. Appellants attached affidavits to their opposition (a) describing the administrative procedure followed in cases where an officer insisted he should not use sick leave for his absence from duty, and (b) depicting the hearing accorded appellee Woody in his own case.

The trial court, without considering appellants' opposition and affidavits and without hearing argument so far as the record shows (Record at 28), granted appellee's motion for summary judgment "on the is-

---

*ed States,* 648 F.2d 1324, 1327 (Ct.Cl.1971) (citations omitted).

"However, not every procedural defect, no matter how trivial or harmless, will nullify what otherwise would have been a valid discharge.... Where the defect in no way prejudiced the plaintiff, it may be treated as harmless error." *Crimaldi v. United States,* 651 F.2d 151, 154 (2d Cir.1981) (citations omitted). The collective teachings of *Crimaldi* and *Carey* counsel against the awarding of back pay under 5 U.S.C. 5596 in this case absent a remand at which the procedural errors below can be evaluated from the standpoint of harmless error.

7. We do not view our holding today as inconsistent with our holding in *District of Columbia v. Jones, supra.* There, we affirmed the trial court's grant of a summary judgment *only* on the issue of whether the appellee was accorded procedural due process by the Department in its determination of his right to administrative sick leave. We, however, remanded the case to the trial court, *see Kegley v. District of Columbia,* D.C.App., 440 A.2d 1013 (1982), after find-

ing that "[t]here . . . remain[ed] genuine issues of material fact as to the extent of damages suffered by appellee and proximately caused by the denial of due process and whether these damages should have been mitigated." *District of Columbia v. Jones, supra* at 524–25.

While this court there spoke in terms of a hybrid tort/contract analysis to determine the appropriate remedy for a deprivation of due process rights, it recognized, as did the Court in *Carey,* that absent a showing on remand of proven damages proximately caused by the due process deprivation, no consequential damages were warranted.

1. Since appellee did not perform any duties for about one year he ultimately exhausted his sick leave and was required to take leave without pay.

2. His application for retirement on the ground of a service-incurred disability was also denied for lack of evidence that the 1964 injury disabled him in 1975.

sue of liability" and ordered either a stipulation by the parties "as to the value of the lost wages" or the scheduling of a trial "on the issue of damages only." Appellants noted an appeal from this order as well as from an order subsequently entered by the trial court remanding the case to the Police Department for a determination *and* then payment of the pay and leave benefits owed appellee.

I am unable to agree with the majority that "the trial court was correct insofar as it granted summary judgment on the issue whether procedural due process was afforded appellee at the administrative level."

In upholding the trial court's ruling in the face of the obvious factual dispute over the adequacy of the hearing afforded appellee, the majority relies upon a concession by government counsel at oral argument that the "procedures" in this case did not differ from those followed by the Police Department in *District of Columbia v. Jones*, D.C. App., 442 A.2d 512 (1982). However, given the record before us and Corporation Counsel's assertion at trial (Record at 18) and on appeal (Brief at 7–8), that this case is clearly distinguishable from *Jones*, I must conclude that the trial court erred in summarily finding liability on the part of the Chief of Police.

In *Jones, supra*, this court recognized that "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." 442 A.2d at 517, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Since some of the "procedural formalities" essential for a fair determination of an officer's right to sick leave were absent, we concluded that Jones was denied procedural due process in his Police Department hearing. *Jones, supra* at 524.

In reaching this decision, we listed a number of fundamental elements of an essentially fair hearing. First, we stated that an officer must "receive prior notice of the proposed termination of his administrative sick leave, of the basis for the termination, and of the extent of his rights to contest the action." *Jones, supra* at 521. Second,

an officer must be given the opportunity to know the evidence against him, and to present reasons why sick leave status should be granted. *Id.* at 552. We found the record to be silent on whether Jones received any notice of his rights before the Department and on the extent to which Jones' rights to know the evidence against him and respond to it were protected. *Id.* at 521–22.

In the case at bar, the record clearly reflects that appellee was given (a) immediate notice of the Clinic Division's determination that he was ineligible for sick leave; (b) the reason for such a decision, and (c) notice of the extent of his rights to contest the action. (Record at 27.) The decision notice dated April 7, 1976, specifically directed appellee's attention to his right of appeal and to submit "all additional relevant information" as outlined in the Police Department General Order No. 1001.1 (Record at 27; Brief for Appellants at 10.)

In *Jones, supra*, we also stated that officers should have the right to an informal hearing and be apprised of the manner in which they would be conducted. As in *Jones*, the informal meetings in the case at bar with MPD representatives satisfied the hearing requirement, and unlike the situation in *Jones*, appellee here was referred to Order 1001.1 for at least some description of the manner in which they would be conducted. (Record at 27.)

Additionally, in *Jones* we found that meaningful appellate review was precluded because there was no record of the procedures followed in the actual proceedings. *Jones, supra* at 523.

Here, the record contains a sworn statement that the Police Department follows the practice of allowing officers contesting whether they are obliged to use their sick leave when they claim they are incapacitated by reason of on-duty injury "to be represented by counsel and to present any relevant evidence ... to the hearing officers." (Record at 23.) In addition, there is in the record a "Summary" of a hearing held in the instant case by the Assistant Chief of Police to review the initial written determi-

nation (Record at 27) that appellee's absence was not occasioned by a back injury he had suffered while on duty 11 years earlier. At this hearing, appellee testified and was represented by counsel (Record at 24.)

Upon the record before us I do not see how the trial court could summarily find liability on the part of the Chief of Police for his failure to accord due process in considering appellee's claim that he should have been on administrative leave while he was not working as a police officer. Surely, the pleadings which are not in the record on appeal required the trial court at least to hold a hearing on the issue of the procedures followed and whether appellee was denied due process. Put another way, the record, such as it is, shows that appellee did have an opportunity to assert his claim, that he was made aware of the basis for the initial disapproval of his claim, and that he and his counsel had an opportunity to present evidence and argument at the review of the initial adverse determination.[3] The majority does not explain to my satisfaction how the trial court could summarily enter a judgment for appellee under these circumstances and therefore I must dissent from its conclusion.

As to the trial court's determination of damages, it is clear that that Supreme Court's decision in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) mandates reversal and remand for further proceedings in the Police Department as the majority directs.

---

**3.** The majority in upholding the trial court's grant of summary judgment against the District upon the obvious factual dispute over the adequacy of the hearing afforded appellee relies upon a concession by government counsel at oral argument that the "procedures" in this case did not differ from those followed by the Department in *D.C. v. Jones,* D.C.App., 442 A.2d 512 (1982). Both at trial (Record at 18) and on appeal (Brief at 3–4) the Corporation Counsel asserted that the instant case is clearly distinguishable from *Jones.*